**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TRICIA FULLERTON, KARYN SLEPIAN, CLARIBEL GRAU, and JAN SIMON, on behalf of themselves and all others similarly situated, | Civil Action No. 1:18-cv-4152 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| CORELLE BRANDS, LLC (previously d/b/a World Kitchen, LLC) and CORELLE BRANDS HOLDINGS, INC. (previously d/b/a World Kitchen Holdings, Inc.), | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs TRICIA FULLERTON, KARYN SLEPIAN, CLARIBEL GRAU, and JAN SIMON, on behalf of themselves and all others similarly situated, through their undersigned counsel, bring this Class Action Complaint ("Complaint") against Defendants CORELLE BRANDS, LLC, previously doing business as World Kitchen, LLC, and CORELLE BRANDS HOLDINGS, INC., previously doing business as World Kitchen Holdings, Inc. ("Corelle Brands" or "Defendants"). The following allegations are based upon personal knowledge as to Plaintiffs' own facts, upon investigation by Plaintiffs' counsel, and upon information and belief where facts are solely in the possession of Defendants.

## NATURE OF THE DEFECT

1.     Corelle Brands designs, manufactures, markets, and sells a wide range of bakeware, dinnerware, kitchen and household tools, cookware, kitchen storage, and cutlery, touting itself as

1

"the vanguard in the housewares industry since the 19th century."[1] Until early 2018, Corelle Brands, LLC was named and doing business as World Kitchen, LLC.[2]

2.      Corelle Brands sells its products under a number of brand names. One of those brands is Pyrex, a glass company that since 1919 has manufactured, marketed, and sold glass cookware and other glassware items. For decades, Pyrex was known and advertised to consumers as "oven to ice-box" or "ice-box to oven" cookware because of its resistance to extreme changes in temperature. This resistance to extreme temperature changes resulted from Pyrex products being made of borosilicate glass, which has a high thermal shock resistance.[3]

3.      In its original patent application dated May 27, 1919, Corning Glass Works (the former parent company and manufacturer of Pyrex glass until the formation of World Kitchen, LLC, which later became Corelle Brands, LLC) specifically stated that its products would be made of borosilicate glass due to its high coefficient for thermal endurance.

4.      At some point around 1998, when Corelle Brands, LLC was formed (as World Kitchen, LLC), Pyrex began making its glassware from tempered soda lime silicate glass, rather than with borosilicate glass.

---

[1] *About World Kitchen, LLC*, http://www.pwrnewmedia.com/2011/world_kitchen/pyrex/downloads/world_kitchen_fact_sheet.pdf (last viewed June 14, 2018).

[2] PR Newswire, *World Kitchen Changes Name to Corelle Brands* (Feb. 5, 2018, 7:30 ET), http://www.prnewswire.com/news-releases/world-kitchen-changes-name-to-corelle-brands-300593135.html (last viewed June 14, 2018).

[3] *See generally* T.J. Liu & N.A. Fleck, *The Thermal Shock Resistance of Solids*, 46 Acta Materialia 4755 (1998).

5.      Borosilicate glass, which prior to roughly 1998 was used to make Pyrex Glassware, has a low "coefficient of thermal expansion."[4] This makes borosilicate glass very resistant to thermal shock—or maximum change in surface temperature which a material can withstand without cracking, breaking, shattering, or exploding.[5] In contrast, soda lime silicate glass, which is the cheapest form of commercial glass to produce[6] and has been used to make Pyrex Glassware since roughly 1998, has a very high coefficient of thermal expansion[7] and a very poor thermal shock resistance.[8] Accordingly, soda lime silicate glass is much more prone to cracking, breaking, shattering, or exploding when exposed to rapid changes in temperature.[9] For this reason, borosilicate glass is "stronger and harder than soda lime [silicate] glass"[10] and is used to make laboratory-grade glass ware and "quality cookware."[11]

6.      Soda lime silicate glass can only withstand much smaller changes in temperature before fracturing, as compared to the changes in temperature that "traditional" Pyrex made from borosilicate glass were able to withstand. Nevertheless, Corelle Brands began selling its soda lime

---

[4] *Id.* at 4755; *Borosilicate Glass vs. Soda Lime Glass?* Rayotek Scientific, Inc., https://rayotek.com/wpnews/borosilicate-glass-vs-soda-lime-glass (last viewed June 14, 2018).

[5] *Supra*, 46 Acta Materialia 4755, 4755 (1998); *Transparent Materials Comparison*, Rayotek Scientific, Inc., http://rayotek.com/tech-specs/material-comparisons.htm (last viewed June 7, 2018).

[6] *Types Of Glass*, Corning Museum of Glass, http://www.cmog.org/article/types-glass (last viewed June 13, 2018).

[7] *Supra*, *Borosilicate Glass vs. Soda Lime Glass?*

[8] *Supra*, *Transparent Materials Comparison*.

[9] *Supra*, *Borosilicate Glass vs. Soda Lime Glass?*

[10] *Supra*, *Transparent Materials Comparison*.

[11] *Id.*

silicate glass products under the Pyrex brand name without informing consumers of the change in its glass composition, and without giving consumers notice of the risks and dangers posed by Pyrex products manufactured from heat-tempered soda lime silicate glass.

## RESEARCH OF DR. RICHARD BRADT

7.     Various studies have demonstrated the significant differences in thermal endurance and resistance to temperature change when comparing borosilicate glass to soda lime silicate glass. For example, Dr. Richard Bradt, a materials scientist and professor emeritus at the University of Alabama whose expertise includes glass, conducted an independent experiment along with another scientist to determine the thermal shock resistance of pure soda lime silicate glass (the material currently used to manufacture Pyrex-brand glass cookware), when compared to borosilicate glass (the material from which traditional Pyrex glass cookware was manufactured). Dr. Bradt's findings demonstrated that borosilicate glass can withstand a 333-degree Fahrenheit change in temperature (hereinafter expressed symbolically, e.g. 333°F) before fracturing while soda lime silicate glass can withstand a temperature change of only 99°F before fracturing.[12]

8.     In 2012, Corelle Brands attempted to discredit the findings of Dr. Bradt and his colleagues. Corelle unsuccessfully sued the scientists and a publication for alleged violations of the Illinois Deceptive Trade Practices Act ("DTPA") in the United States District Court for the Northern District of Illinois. *World Kitchen, LLC v. The American Ceramic Society, et al.*, Case No. 12-cv-8626 (N.D. Ill.). In its complaint, Corelle Brands alleged that Dr. Bradt and his colleagues violated the DTPA by publishing an article stating that the thermal shock resistance of the heat-tempered soda lime silicate glass from which Pyrex Glassware is made is only 99°F.

---

[12] R.C. Bradt & R.L. Martens, *Shattering glass cookware*, American Ceramic Society, Sept. 2012, at 33 (attached as **Exhibit A**).

Corelle alleged that this information was false, deceptive, and misleading to consumers. After a bench trial, in which Corelle Brands presented neither credible testimony nor admissible evidence to prove the falsity or misleading nature of any of Dr. Bradt's findings, the court ruled in favor of Dr. Bradt and his co-defendants. The court found no evidence refuting Dr. Bradt's findings that the thermal shock resistance of Corelle Brands' Pyrex brand soda lime silicate glass cookware is only 99°F, stating that "nothing in the record establishes that this value is false." *World Kitchen, LLC v. The American Ceramic Society, et al.*, Case No. 12-cv-8626, 2016 U.S. Dist. LEXIS 85717, at *20 (N.D. Ill. June 30, 2016).[13] Corelle Brands appealed the court's judgment but later voluntarily dismissed its appeal. *World Kitchen, LLC v. Bradt*, No. 19-3082, 2017 U.S. App. LEXIS 15391 (7th Cir. Feb. 28, 2017).

9.      Corelle Brands continued its attempt to discredit the findings of Dr. Bradt's study and similar studies on its website in a section called "The Truth About Pyrex." The stated purpose of that particular section of the website is that Corelle Brands "want[s] you to know about reports mischaracterizing and wrongly disparaging the reliability, durability and excellent safety record of American-made glass cookware made from heat-strengthened soda lime glass."[14]

## NATURE OF THE ACTION

10.      Corelle Brands designed, manufactured, marketed, and sold its soda lime silicate Pyrex Glassware that suffers from a serious and dangerous defect. Specifically, during ordinary and routine use, Pyrex Glassware products manufactured from partially tempered soda lime silicate glass ("Pyrex Glassware") are prone to abrupt and dangerous shattering when exposed to

---

[13] Order, ECF No. 259, *World Kitchen, LLC v. The American Ceramic Society, et al.*, No. 1:12-cv-08626 (N.D. Ill. June 30, 2016) (attached as **Exhibit B**).

[14] World Kitchen, LLC, *The Truth About Pyrex* (attached as **Exhibit C**).

temperature changes that reasonable consumers expect Pyrex Glassware to withstand based upon the product's history, advertising, and the company's express claims related to its durability (the "Defect").

11. The defective products included in this case are all Pyrex Glassware products made from partially tempered soda lime silicate glass sold by Corelle Brands (also called World Kitchen, LLC).

12. At all relevant times, Corelle Brands knew or should have known of the Defect but nevertheless marketed, advertised, and sold glass cookware under its Pyrex name without distinguishing between the older borosilicate glass products and the defective soda lime silicate glass products; failed to warn consumers that the type of glass used to manufacture its Pyrex products had changed and that the soda lime silicate glass used for the Pyrex products creates serious safety risks; and failed to recall the dangerously defective Pyrex Glassware despite its knowledge of the risk of significant injuries the Defect poses to consumers as well as the Defect's likelihood of causing a catastrophic failure of the product.

13. As a direct and proximate result of the Defect and the inherent safety risk posed by the Defect, and as a direct and proximate result of Corelle Brands' concealment of the Defect, its failure to warn customers before their purchase of the products' change and Defect, its failure to remove the defective Pyrex Glassware from the stream of commerce, and its failure to recall or remedy the Defect, Plaintiffs and other similarly situated consumers (the "Class" or "Class Members") purchased and used Corelle Brands' defective and unsafe Pyrex Glassware when they otherwise would not have made such purchases, or else would have paid significantly less for the Pyrex Glassware manufactured from soda lime silicate glass.

14.     Plaintiffs' and putative Class Members' Pyrex Glassware fails (or faces a substantial risk of failure) when Plaintiffs and Class Members use the product as intended and expose the product to temperature differences that they reasonably expect Pyrex Glassware to withstand. The manifestation of the Defect results in the catastrophic failure of the glassware, the loss of meals prepared in the glassware, and for some Plaintiffs and Class Members, causes significant and painful personal injuries and/or property damage.

15.     Plaintiffs' and all putative Class Members' Pyrex Glassware each contain the same Defect at the point the glassware products are placed by Corelle Brands into the stream of commerce, posing the same substantial safety risk to Plaintiffs, Class Members, consumers, and the public. Corelle Brands' Pyrex Glassware cannot be used safely for its intended purpose of preparing meals at home.

## PARTIES

16.     Plaintiff Tricia Fullerton is a resident and citizen of New York living in Brooklyn, Kings County, New York.

17.     Plaintiff Karyn Slepian is a resident and citizen of New York living in Dix Hills, Suffolk County, New York.

18.     Plaintiff Claribel Grau is a resident and citizen of Florida living in Tampa, Hillsborough County, Florida.

19.     Plaintiff Jan Simon is a resident and citizen of Michigan living in St. Johns, Clinton County, Michigan.

20.     Defendant Corelle Brands, LLC is a Delaware limited liability company with its principal place of business located at 9525 West Bryn Mawr Avenue, Rosemont, Illinois 60018. Defendant Corelle Brands, LLC is citizen of the States of Delaware and Illinois.

21.     Defendant Corelle Brands Holdings, Inc. is a Delaware corporation with its principal place of business located at 9525 West Bryn Mawr Avenue, Rosemont, Illinois 60018. Corelle Brands Holdings, Inc. is a citizen of the States of Delaware and Illinois.

22.     Upon information and belief, the sole member and owner of Corelle Brands, LLC is Corelle Brands Holdings, Inc., a citizen of the States of Delaware and Illinois.

23.     Defendant Corelle Brands, LLC designs, manufacturers, markets, and sells Pyrex Glassware online and through third-party retailers throughout the United States.

## JURSIDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332(d)(2). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and some Class Members are citizens of states other than where Defendants are incorporated or have their primary places of business.

25.     This Court may exercise jurisdiction over Defendants pursuant to 28 U.S.C. § 1332(c)(1) because they are citizens of this State and District and maintain their principal places of business in this District, they have continuous and systematic contacts with this District, they do substantial business in this State and within this District, receive substantial revenues from their marketing, distribution, and sales of Pyrex Glassware in this District, and have engaged in the unlawful practices described in this Complaint in this District, so as to subject themselves to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants have continuous and systematic contacts with this District and maintain their principal places of business within this District. Further, venue is proper in this District under 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

27.     Corelle Brands is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Pyrex Glassware.

28.     Pyrex Glassware is used for food preparation through freezing, storing, cooking, baking, or microwaving foods placed in Pyrex Glassware, each of which subjects the glassware to different temperatures. Consumers turn to Pyrex Glassware because of its reputation for sturdiness and versatility in the kitchen. However, when partially heat-tempered soda lime Pyrex Glassware is exposed to a sudden change of temperature of approximately 99 degrees, it is susceptible to fracturing, breaking, shattering, or exploding. For example, a difference in temperature that exceeds 99°F can and does occur by placing a hot Pyrex Glassware item on a room temperature trivet. Further, such a difference in temperature exceeding 99°F can and does occur through the baking process, or by leaving Pyrex Glassware in the oven to cool.

29.     Throughout Pyrex Glassware's Owner's Manual and other written documents authored by Corelle Brands and distributed with its products or provided publicly to consumers through its website, Corelle Brands expressly warrants that Pyrex Glassware is free from defects, durable, and suitable for use when cooking at high temperatures.[15]

30.     Several publications regarding consumer products, including Consumer Reports and the American Ceramics Bulletin, published studies showing that the partially heat-tempered soda lime silicate Pyrex Glassware has a much lower resistance to temperature change than

---

[15] *See PYREX Limited Two-Year Warranty*, http://www.pyrexware.com/4.5-qt-oblong-baking-dish/5302470.html#start=2 (last viewed June 14, 2018).

traditional Pyrex Glassware made from borosilicate glass, and thus has a much higher susceptibility to fracturing, breaking, shattering, or exploding.

31.     Plaintiffs and Class Members purchased and/or used their Pyrex Glassware reasonably believing it was properly designed and manufactured, free from defects, and safe for its intended use.

32.     Plaintiffs and Class Members purchased and/or used their Pyrex Glassware for its intended purpose of preparing meals at home in a manner reasonably foreseeable by Corelle Brands. Plaintiffs, however, are now unable to use their Pyrex Glassware for its intended purpose, or are required to place themselves and their families at risk when using it, because the Defect renders it unsafe as it is unable to properly resist thermal shock for regular changes in temperature of 99°F or higher that occur when used for its intended purpose. The Defect makes the Pyrex Glassware much more susceptible to sudden glass fracturing, breaking, shattering, or exploding during normal and expected household cooking, exposing consumers to glass shards and hot contents contained within the glassware.

33.     The Defect poses an unreasonable safety risk and substantial risk of injury during its normal and intended use.

34.     Corelle Brands knew or should have known that the Defect exists in the Pyrex Glassware at the point of sale and of the serious safety risk it posed to consumers and the public, but chose to conceal its knowledge from consumers who purchased Pyrex Glassware. In fact, when reports and studies were released explaining that the soda lime silicate Pyrex Glassware was defective and had a significantly lowered its thermal shock resistance, Corelle Brands—as noted above—actively attempted to refute and discredit those reports and studies.

35.     Corelle Brands continues to remain silent about the Defect and to sell Pyrex Glassware to unsuspecting consumers, even though it is aware that partially heat-tempered soda lime silicate glass Pyrex can withstand only a 99°F change in temperature whereas the traditional borosilicate Pyrex glass can withstand a temperature change of approximately 333°F. Moreover, reasonable consumers are unable to distinguish between the two types of Pyrex glassware.

36.     As a result of Corelle Brands' conduct, Plaintiffs and Class Members have suffered damages, including, without limitation: (a) the purchase price of Pyrex Glassware, as Plaintiffs and Class Members would not have purchased the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for Pyrex Glassware; (d) the diminished value of Pyrex Glassware; (e) the costs of replacement of Pyrex Glassware; (f) damages to real and/or personal property; and (g) damages for personal injuries.

## PLAINTIFFS' EXPERIENCES

### Plaintiff Tricia Fullerton

37.     Plaintiff Tricia Fullerton is a resident of Brooklyn, Kings County, New York. In September of 2017, Plaintiff Fullerton's boyfriend purchased Pyrex Glassware for her. Ms. Fullerton read the safety and usage instructions included on the packaging and used her Pyrex Glassware to cook food in her oven as it was advertised and intended to be used. Her Pyrex Glassware was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Corelle Brands. Ms. Fullerton's Pyrex Glassware was covered by the same two-year Limited Warranty covering all Pyrex Glassware.

38.     On February 9, 2018, Plaintiff Fullerton used her Pyrex Glassware to prepare chicken nuggets in her oven. Prior to cooking the chicken nuggets, Ms. Fullerton preheated her oven as required by the food's cooking instructions. After cooking the chicken nuggets for 15-20

minutes at 450°F, wearing a silicone oven mitt, Ms. Fullerton removed the dish from the oven and set it on top of her stove, which was turned off. As she was putting the dish on the stovetop—and while still grasping it with her hand—it shattered, sending the hot food in the dish and glass shards all over her kitchen. Because the oven mitt only covered a portion of her hand, Ms. Fullerton's hand was cut when the dish failed. Glass covered the floor to the extent that Plaintiff had to very cautiously "tip-toe" out of the kitchen to avoid getting cut. Photographs of Plaintiff Fullerton's kitchen and Pyrex dish after it shattered are included:





39.     Shortly after her Pyrex Glassware shattered, Plaintiff Fullerton contacted the Customer Service Department of Corelle Brands regarding the incident. They responded by telling her that their glassware products should always be placed on a dry cloth or potholder when being removed from the oven. They also stated that placing their glassware on an 80° cooktop following cooking would likely cause thermal shock which could in turn cause the glassware to shatter. They did not offer Ms. Fullerton any relief to compensate her for the loss of her baking dish.

40.     Had Plaintiff Fullerton been aware of the Defect, she would not have used Pyrex Glassware. She did not receive the intended benefit of the bargain for which the product was purchased.

13

**Plaintiff Karyn Slepian**

41.     Plaintiff Karyn Slepian is a resident of Dix Hills, Suffolk County, New York. In 2013, Plaintiff Slepian purchased a piece of Pyrex Glassware from a local retail store. Ms. Slepian read the safety and usage instructions included on the packaging and used her Pyrex Glassware to cook food in her oven as it was advertised and intended to be used. Her Pyrex Glassware was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Corelle Brands. Ms. Slepian's Pyrex baking dishes were covered by the same two-year Limited Warranty covering all Pyrex Glassware.

42.     On February 20, 2018, Plaintiff Slepian cooked pre-marinated meat in her oven after preheating according to the cooking instructions. After cooking the meat for some time, Ms. Slepian reduced the heat from 450°F to 350°F according to the recipe's cooking instructions. After the meat completed cooking, Ms. Slepian lowered the temperature of the oven to its warm setting in order to keep the meat warm. Following that reduction in temperature and while the oven door was still closed, Ms. Slepian heard a loud "bang" while in another room. Upon opening the oven door, she discovered that the Pyrex baking dish had shattered, ejecting the hot contents of the dish and scattering glass shards all about her oven. A photograph of Plaintiff Slepian's oven and her Pyrex dish after it failed is included:



43.    After allowing the oven to cool, Plaintiff Slepian cleaned her oven to remove the glass shards. Ms. Slepian suffered minor cuts on her hands as a result of having to pick glass out from the bottom of her oven.

44.    Had Plaintiff Slepian been aware of the Defect, she would not have purchased or used her Pyrex Glassware, or else would have paid significantly less for it. She did not receive the benefit of her bargain.

**Plaintiff Claribel Grau**

45.     Plaintiff Claribel Grau is a resident of Tampa, Hillsborough County, Florida. On June 3, 2018, Plaintiff Grau purchased a piece of Pyrex Glassware from her local Target store. Ms. Grau read the safety and usage instructions included on the packaging and used her Pyrex Glassware to cook food in her oven as it was advertised and intended to be used. Her Pyrex Glassware was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Corelle Brands. Ms. Grau's Pyrex Glassware was covered by the same two-year Limited Warranty covering all Pyrex Glassware.

46.     On the same day that Plaintiff Grau purchased the Pyrex Glassware, she used it to prepare banana bread in the oven. Prior to baking the banana bread, Ms. Grau preheated her oven as required by the recipe's cooking instructions. After baking the banana bread for about 30 minutes at 320°F, Ms. Grau removed the baking dish from the oven and placed it on a cloth trivet on her countertop. After letting the banana bread cool on the trivet for approximately 5 to 7 minutes, Ms. Grau attempted to cut a piece of the banana bread. As Ms. Grau was cutting the banana bread, her Pyrex dish shattered, showering Plaintiff Grau with shards of glass and scattering glass fragments about her kitchen. Photographs of Plaintiff Grau's countertop and her Pyrex dish after it shattered are included:





47.    On June 13, 2018, Plaintiff Grau contacted Corelle Brands' Consumer Care Center to report her exploding Pyrex baking dish incident. After noting the details of Ms. Grau's incident, the Corelle Brands representative offered to send a replacement dish. Ms. Grau questioned whether the replacement dish would have the same Defect.

48.     Had Plaintiff Grau been aware of the Defect, she would not have purchased her Pyrex Glassware, or else would have paid significantly less for it. She did not receive the benefit of her bargain.

**Plaintiff Jan Simon**

49.     Plaintiff Jan Simon is a resident of St. Johns, Clinton County, Michigan. In or about September of 2010, Plaintiff Simon received a piece of Pyrex Glassware as a gift. Ms. Simon read the safety and usage instructions included on the packaging and used her Pyrex Glassware to cook food in her oven as it was advertised and intended to be used. Her Pyrex Glassware was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Corelle Brands. Ms. Simon's Pyrex glass baking dish was covered by the same two-year Limited Warranty covering all Pyrex Glassware.

50.     On or about September 25, 2014, Plaintiff Simon cooked chicken breasts in her oven after adding broth to the bottom of the 9" x 13" Pyrex glass baking dish while it was still cool and preheating to 350º F according to the cooking instructions. After cooking the chicken for 30 minutes, Ms. Simon opened the oven and removed the sheet of aluminum foil with which she covered the baking dish. As she was removing the aluminum foil, the Pyrex baking dish shattered, ejecting hot liquid and glass shards from her oven and covering her kitchen floor. Photographs of Plaintiff Simon's oven and her Pyrex dish after it shattered are included:







51.     On September 26, 2014, Ms. Simon contacted the Consumer Product Safety Commission ("CPSC") via email to report the incident. The CPSC responded the same day and suggested that Ms. Simon file a report via the SaferProducts.gov website. That same day, Ms. Simon filed a report with SaferProducts.gov that was subsequently forwarded to Corelle Brands.

52.     On May 12, 2016, a representative of Corelle Brands (then doing business as World Kitchen, LLC) responded by providing Ms. Simon with a survey to fill out. Ms. Simon responded to the survey as requested and returned her responses to the Corelle Brands representative.

53.     On May 13, 2016, a representative of Corelle Brands emailed Ms. Simon to inform her that because she did not save what remained of the broken Pyrex baking dish, they could not determine the cause of the explosion. They did, however, offer her a $25.00 credit towards the purchase of a new item manufactured by Corelle Brands. Ms. Simon ordered two baking dishes manufactured by Corelle Brands under their Corningware brand. The dishes subsequently arrived from the manufacturer shattered and unusable on June 2, 2016.

54.     Had Plaintiff Simon been aware of the Defect, she would not have used Pyrex Glassware. She did not receive the intended benefit of the bargain for which the product was purchased.

## CORELLE BRANDS' CONDUCT

55.     Corelle Brands failed to adequately design, manufacture, and/or test Pyrex Glassware to ensure it was free from the Defect before offering it for sale to Plaintiffs and Class Members, despite its duty to do so.

56.     The Defect poses a serious and immediate safety risk to consumers and the public and has caused or will cause Plaintiffs' and Class Members' Pyrex Glassware to fail during its expected useful life.

57.     Corelle Brands' Pyrex Glassware should have been usable for its intended purpose during its full expected useful life. The Defect, however, existed from the time of manufacture and thus at the time the Pyrex Glassware was sold to Plaintiffs and Class Members, rendering it unfit for the ordinary and intended purpose for which it is designed, manufactured, advertised, marketed, distributed, and sold.

58.     If Pyrex Glassware did not suffer from the Defect, Plaintiffs and Class Members would not have suffered the damages set forth in this Complaint.

59.     Corelle Brands has a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage. Nevertheless, even though Corelle Brands knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell Pyrex Glassware, and failed to remove Pyrex Glassware from the marketplace. Corelle Brands took these actions to attain the substantial financial benefits of selling the defective Pyrex Glassware to the unsuspecting public.

60. Corelle Brands knew or should have known that consumers including Plaintiffs and Class Members: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pyrex Glassware failed; (b) expected to use Pyrex Glassware in their homes without putting their safety and property at risk; and (c) expected Corelle Brands to disclose any Defect that would prevent Pyrex Glassware from safely performing its intended purpose, as such disclosure by Corelle Brands would impact a reasonable consumer's decision whether to purchase and/or use Pyrex Glassware.

61. As a result of Corelle Brands' concealment of the Defect, many Class Members and consumers remain unaware of the existence of the Defect and that it poses an unreasonable risk of personal injury and/or property damage during normal use.

62. Had Plaintiffs and Class Members been made aware of the Defect, they would not have purchased Pyrex Glassware, or else would have paid significantly less for the Pyrex Glassware, and were deprived of the intended benefit of the bargain for which the product was purchased.

## CORELLE BRANDS' KNOWLEDGE OF THE DEFECT

63. Corelle Brands knew or should have known when it sold Pyrex Glassware to the public that it suffered from the Defect and that the Defect causes Pyrex Glassware to function improperly during its expected useful life, represents an unreasonable risk that Pyrex Glassware would crack, break, shatter, or explode when used as advertised and intended, and at times results in significant personal injury and/or property damage to consumers and the public, as well as the catastrophic destruction of the product itself.

64. Corelle Brands' knowledge of these facts is established through civil complaints filed by or against Corelle Brands (previously doing business as World Kitchen, LLC) pertaining

to heat-tempered soda lime glass Pyrex products and online postings complaining that Pyrex Glassware failed during normal use. Despite its knowledge, Corelle Brands did not remedy or eliminate the Defect in Pyrex Glassware or remove its defective products from the stream of commerce.

65.     For example, in 2005, a complaint was filed and later removed to the United States District Court for the Northern District of California alleging that, while using Pyrex Glassware, the Pyrex dish broke apart in the plaintiff's hand, causing severe, permanent injuries. *See Nebenzahl v. Corning Incorporated, et al.*, No. 3:06-cv-00778-SC (N.D. Cal. 2006).[16]

66.     In 2012, a complaint was filed and later removed to the United States District Court for the District of Maryland alleging that the plaintiff's Pyrex Glassware fractured and spilled hot contents of the dish onto the plaintiff, causing severe, permanent injuries. *See Rusnakova v. World Kitchen, LLC*, No. 12-cv-03650-RDB (D. Md. 2012).

67.     In 2013, a complaint was filed and later removed to the United States District Court for the Western District of Pennsylvania alleging that the plaintiff's Pyrex Glassware shattered as he was removing it from the oven, causing lacerations on his wrist. *See Llewellyn v. World Kitchen, LLC*, No. 2:13-cv-00771-LPL (W. D. Pa. 2013).

68.     In 2013, a complaint was filed and later removed to the United States District Court for the District of New Jersey alleging that the plaintiff's Pyrex Glassware fragmented, broke, shattered, and exploded, sending shards of glass flying into the air and causing severe, permanent injuries. *See Montagnino v. World Kitchen, LLC, et al.*, No. 2:13-cv-04909-JLL-JAD (D.N.J. 2013).

---

[16] The plaintiff in *Nebenzahl* additionally sued "World Kitchen, Inc." and "WKI Holding Company, Inc."

69.     In 2013, a complaint was filed and later removed to the United States District Court for the Southern District of New York alleging that, while using Pyrex Glassware, the Pyrex baking dish shattered and sent fragments of glass flying in all directions, causing severe, permanent injuries to the plaintiff, including blindness in one eye. The plaintiff further alleged that the Pyrex Glassware that injured her was manufactured with soda lime silicate glass, which was not suitable for its intended and reasonably anticipated use as oven bakeware. *See Chinn v. World Kitchen, LLC*, No. 7:13-cv-06579-CS (S.D.N.Y. 2013).

70.     Corelle Brands is aware of the significant difference in thermal shock resistance between borosilicate Pyrex (which can withstand a temperature differential of 333°F) and heat-tempered soda lime Pyrex (which can withstand only a 99°F temperature differential) as evidenced by the lawsuit against Dr. Bradt, which Corelle Brands vigorously prosecuted but for which it ultimately failed to prove any deception by Dr. Bradt and his colleagues.[17]

71.     Specifically, Corelle Brands (then doing business as World Kitchen, LLC), in an attempt to downplay and conceal the Defect, alleged that Dr. Bradt misrepresented that the thermal shock resistance of soda lime silicate glass and Pyrex Glassware was only 99°F. They further alleged that in authoring and publishing the findings pertaining to the weak thermal shock resistance of soda lime silicate glass, Dr. Bradt and his co-defendants engaged in conduct creating a likelihood of confusion or misunderstanding about Pyrex glass cookware's resistance to thermal breakage during normal cooking.

72.     Corelle Brands also took issue with statements that soda lime silicate glass cookware experienced "sudden, explosion-like failure" and that any heat-strengthening applied to

---

[17] *Supra*, ¶ 8.

the glass cookware was insufficient to significantly increase strength or thermal shock resistance of the soda lime silicate glassware.

73. In its order, the trial court opined that "[n]othing in the trial record contradicts [Dr. Bradt's] calculations of the [thermal shock resistance] of soda lime silicate glass," and that "nothing in the record establishes that this value is false."[18]

74. Corelle Brands' actual knowledge of this Defect is evidenced by the section of their website entitled "The Truth About Pyrex"[19] wherein Corelle Brands continues to attempt to discredit findings that their soda lime silicate Pyrex Glassware has a significantly lower thermal shock resistance than the borosilicate glassware counterparts, also called "Pyrex."

75. Corelle Brands' lawsuit against Dr. Bradt, et al., and its "The Truth About Pyrex" webpage demonstrate that not only has Corelle Brands been aware of the dangerous and potentially harmful Defect, but that they actively attempt to conceal this dangerous Defect from consumers.

76. Customer complaints reported to the Consumer Product Safety Commission are also indicative of the breadth of this Defect, and further demonstrate that Corelle Brands has long had knowledge of the Defect. These complaints, available online,[20] are all related to Corelle Product's Pyrex Glassware, with some complaints being posted as far back as 2011 and others as recent as the end of 2017.

77. For example, the following complaints, which upon information and belief, are reviewed by and known to Corelle Brands:

---

[18] Order, ECF No. 259, at 13, *World Kitchen, LLC v. The American Ceramic Society, et al.*, No. 1:12-cv-08626 (N.D. Ill. June 30, 2016) (attached as **Exhibit B**).

[19] *Supra*, note 14 (attached as **Exhibit C**).

[20] SaferProducts.gov, http://www.saferproducts.gov/Default.aspx (last viewed June 14, 2018).

a. (In November, 2017) I was baking yams in the largest pan. After I took the pan out of the oven and set it on top of the oven, it exploded. Shards of glass scattered all over the kitchen, as far as seven feet away. I am very lucky that I wasn't hurt and especially lucky that a shard of glass didn't end up in my eye! I used the product the way it is supposed to be used.

b. On July 15, 2017, I had an alarming and dangerous incident. I cooked a salmon patty in my Pyrex Glassware dish at 450 degrees for 15 minutes. I removed the dish from the oven, and before I had the chance to put it down, the glassware violently exploded in my hand, sending shards of glass flying toward my face and throughout my kitchen and the adjoining hallway.

My stove, countertop, kitchen floor, hallway floor were covered in large pieces of shattered glass and small shards of it, everywhere. Fortunately, I was wearing my reading glasses, which I believe protected my eyes from injury.

c. My Pyrex brand glass baking dish shattered spontaneously while sitting in a drawer overnight. While the drawer contained the damage somewhat, chunks of glass sprayed throughout the drawer, ricocheting throughout the cabinet. If this had occurred on a counter, there would have been serious risk.

d. At 1:20am I heard a crashing sound. Upon looking nothing was evident. Later the same day I opened a lower kitchen cabinet and glass spilled everywhere slivers and shards. My 9 x 13 glass Pyrex baking dish exploded on the shelf in the middle of the night! It hadn't been used for weeks and had no damage. I researched and found this is not an uncommon problem. Why is it still being manufactured?

e. The consumer stated that she placed the dish, which contained broccoli and olive oil, in a preheated 375-degree oven. About four minutes later, she heard a pop. She went to the oven and saw that the glass dish had shattered. The contents had spilled and cause a fire in the oven. The consumer turned the oven off and got a fire extinguisher to put the fire out.

f. My 9x13 Pyrex dish exploded 10/8/17 when I attempted to take it out of our dishwasher. It had run its cycle the night before and was no longer hot, my dish had a handle on edge and I just grabbed it and pulled and immediately it exploded shards everywhere spanning a 3-5 foot radius. I screamed for my husband to secure dogs and kids and clean me a way out as I was barefoot and my right arm had 6 bleeding spots and my left hand had a shard centered in the middle superficially but painful.

26

g.  (In September of 2017), I put a large Pyrex measuring cup in my microwave with some stew in it, heated it for less than three minutes, and it shattered when i tried to take it out, burning my hand.

h.  (In April of 2011) when taking a Pyrex 9x12 baking dish from the oven, it actually blew up in my wife's hands. The dish had been in the oven for 15 minutes at 400 degrees. It contained 4 pieces of baked fish that had marinated for 20 minutes in the refrigerator. The explosion was so violent that we found pieces of glass over 40 feet away. The dish shattered into thousands of small pieces. There were very few pieces over 6 inches long. My wife was wearing jeans and closed shoes. She did not get injured even though she was hit with many, many pieces of shrapnel. It took over two hours to clean up the mess off of cabinets, appliances, counter tops, and the floor.

i.  I made lasagna this past weekend (Friday, April 15, 2011) in a Pyrex 9x13 glass baking dish. I only baked it at 350 F for about 30 minutes. When I took it out of the oven and set it on my stove top, the 9x13 glass baking dish exploded. It cut myself and my fiancé, who was approximately 2 feet away from the pan.

j.  (In May of 2011) I was cooking a (half) rack of lamb in a light wine sauce in an 11x13 glass Pyrex dish @ 425 degrees (in a preheated oven) for 15 minutes (not long in my opinion). I removed it from the oven, closed the oven door and it EXPLODED in my hand. Burning hot glass shards and liquids from the lamb and wine marinade went down my shirt and burned and cut me. It sounded just like a small bomb went off and it exploded into a million pieces sending shards in a 6 foot direction. We determined that it indeed was one of our "newer" Pyrex made out of the soda lime glass. Quite frankly, I will never put Pyrex in the oven AGAIN, even at 350 degrees, we believe that it is an unstable product even when the product directions are followed.

k.  I was baking a pork roast for dinner on 6/14/11 at 2:00 pm in the afternoon. roast had been in a preheated oven for approximately 1 hr. I was in living room watching a movie when I heard a loud bang come from the kitchen, when I went to kitchen saw nothing out of ordinary decided to check on roast when I opened door of oven, the Pyrex 13x9 baking pan the roast was in had exploded and shards of glass covered the inside of my oven and in my roast. ruined my roast and my pan had to throw dinner away and took me 2 hrs. and a few burns later finally cleaned up the mess

l.  On October 16, 2011 about 6:30 pm CST I was cooking marinated portobella mushrooms in my oven that was placed in a Pyrex dish. They had been marinated, then placed in the oven second row down and broiled on the lowest setting. I added cheese to the portobellas and then after

approximately 3 minutes I took them out and placed them on some hot pads. The PYREX dish, that I had cooked them in, exploded in to several hundred small shards. The explosion was so violent that it spread out to about 100 feet, caused me to have about 7 nicks on my leg area, burns on my legs, and several tiles on my floor have melted spots on them from the incident. As of now I have not received any medical attention to my injuries.

78.     In conjunction with Corelle Brands' experience in designing, manufacturing, and selling Pyrex Glassware, these consumer complaints and lawsuits demonstrate that Corelle Brands knew about and actively concealed the Defect from Plaintiffs, Class Members and the general public.

79.     Corelle Brands has a duty to disclose the Defect and not to conceal it from Plaintiffs, Class Members, consumers, or the public. Corelle Brands' failure to disclose, or its active concealment of, the Defect places Plaintiffs and Class Members at risk of personal injury and/or property damage.

80.     Corelle Brands still in the business of selling the defective Pyrex Glassware, concealing the Defect, failing to notify consumers of the Defect, and failing to recall or replace the defective Pyrex Glassware.

81.     Moreover, Corelle Brands continues to falsely represent through express and implied warranties that Pyrex Glassware is free from defects, of merchantable quality, and able to perform its intended use dependably for years.

82.     When communicating with customers, Corelle Brands does not disclose that Pyrex Glassware suffers from the Defect. As a result, reasonable consumers, including Plaintiffs and Class Members, purchased and used—and continue to purchase and use—Pyrex Glassware in their homes without knowledge that it is unsafe to do so.

83.     Corelle Brands has wrongfully placed the burden, expense, and difficulty involved in discovering the Defect on Plaintiffs and Class Members, forcing the consumers to replace failed Pyrex Glassware and pay for the cost of personal injuries and/or property damage caused by it.

## PRODUCT ADVERTISING

84.     Corelle Brands advertises its Pyrex Glassware products on its website as versatile and intended for use in a variety of temperatures:

> "Versatility makes it easier for you with these cook-and-serve in one dishes that go from the oven to the table. Use them for dry or refrigerated storage and microwave reheating and enjoy maximum functionality with minimal mess."[21]

> "Dishwasher, refrigerator, microwave & pre-heated oven safe."[22]

85.     Corelle Brands further advertises that each of its Pyrex Glassware products come with a Limited Two-year Warranty:

> Corelle Brands LLC promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase.[23]

86.     Corelle Brands further advertises on product packaging, as shown below, that its Pyrex Glassware products are "Pre-Heated Oven and Microwave Safe":

---

[21] *E.g.*, *Product Details*, http://www.pyrexware.com/easy-grab-4-pc-oblong-baking-dish-set/ 1090992.html#start=8 (last viewed June 14, 2018).

[22] *E.g.*, *Product Details*, http://www.pyrexware.com/4.5-qt-oblong-baking-dish/ 5302470.html#start=2 (last viewed June 14, 2018).

[23] *Id.* at *PYREX Limited Two-Year Warranty* (last viewed June 14, 2018).



## CLASS ALLEGATIONS

87.     Plaintiffs bring this action against Corelle Brands individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the "Nationwide Class":

> *All persons in the United States who purchased or own Pyrex Glassware manufactured from soda lime silicate glass.*

88.     Plaintiffs bring this action against Corelle Brands individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the "New York Class":

> *All persons who reside in New York who purchased or own Pyrex Glassware manufactured from soda lime silicate glass.*

89.     Plaintiffs bring this action against Corelle Brands individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the "Florida Class":

> *All persons who reside in Florida who purchased or own Pyrex Glassware manufactured from soda lime silicate glass.*

90.     Plaintiffs bring this action against Corelle Brands individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the "Michigan Class":

> *All persons who reside in Michigan who purchased or own Pyrex Glassware manufactured from soda lime silicate glass.*

91.     The Nationwide Class and State Classes are collectively referred to herein as the "Class" or "Classes." Excluded from the Classes are: (a) any judge presiding over this action and members of their family; and (b) all officers, directors, and employees of Corelle Brands.

92.     <u>Numerosity</u>: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, each Class consists of thousands of people. The exact number of Class Members can be determined by Corelle Brands' sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity.

93.     <u>Commonality</u>: Common questions of law and fact exist as to all members of each Class, including, without limitation:

a.  Whether Pyrex Glassware designed and sold by Corelle Brands possesses a material defect;

b.  Whether the Defect creates an unreasonable risk that Pyrex Glassware experiences a change in temperature over and above its thermal shock resistance and cause the product to fail;

c.  Whether Corelle Brands knew or should have known that Pyrex Glassware possessed the Defect at the time of sale;

d.  Whether Corelle Brands fraudulently concealed the Defect;

e.  Whether Corelle Brands breached express warranties relating to Pyrex Glassware;

f.  Whether Corelle Brands breached implied warranties of merchantability relating to Pyrex Glassware;

g.  Whether the Defect resulted from Corelle Brands' negligence;

h.  Whether Corelle Brands is strictly liable for selling Pyrex Glassware;

i.  Whether Plaintiffs and Class Members are entitled to damages;

j.  Whether Plaintiffs and Class Members are entitled to replacement of their defective Pyrex Glassware; and

k.  Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction requiring that Corelle Brands engage in a corrective notice campaign and/or a recall.

32

94. <u>Typicality</u>: Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs' claims arise out of the same set of facts and conduct by Corelle Brands as the claims of all Class Members. Plaintiffs' and Class Members' claims all arise out of Corelle Brands' design and sale of the defective Pyrex Glassware that has created a significant safety risk to consumers, and from Corelle Brands' failure to disclose the Defect.

95. <u>Adequacy of Representation</u>: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class Members.

96. <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Corelle Brands will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Corelle Brands has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

97. <u>Predominance</u>: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated Plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

98.     The claims alleged herein accrued upon the discovery of the Defect which manifests itself when Pyrex Glassware fails. Because the Defect is hidden and Corelle Brands failed to disclose the true character, nature, and quality of Pyrex Glassware through concealment, Plaintiffs and the Class Members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation. Thus, any applicable statutes of limitations have been tolled by Corelle Brands' knowledge, misrepresentation, and/or concealment and denial of the facts as alleged herein. Plaintiffs and the Class Members could not have reasonably discovered the Defect before it manifests. As a result of Corelle Brands' active and continuing concealment of the Defect and/or failure to inform Plaintiffs and the Class Members of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

99.     Corelle Brands fraudulently concealed material facts from Plaintiffs, Class Members, consumers, and the public. Corelle Brands knew that its soda lime silicate Pyrex Glassware had a significantly lower thermal shock resistance than its borosilicate glassware but concealed those facts such that consumers had no such knowledge of the Pyrex Glassware's Defect. Corelle Brands had a duty to disclose the Defect to Plaintiffs and Class Members, but it failed to do so. Further, Corelle Brands also knew that Plaintiffs and Class Members had no knowledge that Pyrex Glassware was defective and that Plaintiffs and Class Members did not have an equal opportunity to discover the facts regarding the Defect. Corelle Brands was in a superior position than Plaintiffs and Class Members, but fraudulently concealed the Defect in Pyrex Glassware from them. Through this concealment, Corelle Brands intended to induce Plaintiffs and Class Members to purchase the defective Pyrex Glassware, and Corelle Brands benefitted as a result of its fraudulent concealment from sales of the defective Pyrex Glassware. In furtherance of

34

this concealment: (1) Corelle Brands actively attempted to refute any reports or claims, as discussed herein, that noted that soda lime silicate Pyrex Glassware was defective and weaker than previous borosilicate Pyrex glass products; and (2) when Plaintiffs and Class Members experienced problems with the defective Pyrex Glassware and notified Corelle Brands to make warranty claims, Corelle Brands, as discussed herein, routinely told them that they had failed to use the Pyrex Glassware as instructed. As a result of Corelle Brands' active and continuing fraudulent concealment of the Defect and/or failure to inform Plaintiffs and the Class Members of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CLAIM FOR RELIEF
**Breach of Written Warranties under the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301, et seq.**
**(On behalf of Plaintiffs and the Nationwide Class)**

100.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

101.    Plaintiffs and Class Members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

102.    Corelle Brands is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

103.    Pyrex Glassware are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

104.    Corelle Brands' Limited Warranty applicable to Pyrex Glassware is a "written warranty" within the meaning of the MMWA, 15 U.S.C. § 2301(6).

105.    In connection with its sale of Pyrex Glassware, Corelle Brands expressly warranted that it was free from defects and suitable for cooking at standard cooking temperatures.

35

106. The Warranty states: "Corelle Brands, LLC promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

107. Pyrex Glassware is defectively designed as a whole unit and is covered by Corelle Brands' Limited Warranty, set forth above.

108. Each Pyrex Glassware product has an identical or substantially identical warranty.

109. Plaintiffs and the Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit consumers of Pyrex Glassware. To the extent Class Members purchased Pyrex Glassware from third-party retailers or received Pyrex Glassware as a donee of a purchaser, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Corelle Brands, third-party retailers, and purchasers.

110. The express written warranties covering Pyrex Glassware were a material part of the bargain between Corelle Brands and consumers. At the time it made these express warranties, Corelle Brands knew of the purpose for which Pyrex Glassware was to be used.

111. Corelle Brands breached its express warranties by selling Pyrex Glassware that was, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, and could not be safely used for the ordinary purpose of preparing meals at home. Corelle Brands breached its express written warranties to Plaintiffs and Class Members in that Pyrex Glassware contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

112.    Pyrex Glassware that Plaintiffs purchased were subject to the Defect and caused each of them damages including loss of the product, loss of the benefit of their bargain, personal injuries, and property damage.

113.    Corelle Brands expressly warranted in writing that it "promises to replace any Pyrex glass product *that breaks from oven heat*, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase." (Emphasis added).

114.    Plaintiffs Fullerton, Grau, and Simon notified Corelle Brands of its breach of the express warranty shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect. Moreover, Corelle Brands was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

115.    Corelle Brands breached its express warranty to replace the defective Pyrex Glassware when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing Pyrex Glassware.

116.    To the extent that Corelle Brands offered to replace the defective products, the warranty of replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class Members whole because the warranty covering Pyrex Glassware only "promises to replace any Pyrex glass product that breaks from oven heat." The replacement under the warranty does not apply to all defective Pyrex Glassware—it only applies to Pyrex Glassware that has already manifested the latent Defect and has already failed. The warranty of replacement of failed or broken Pyrex Glassware is insufficient to adequately cover all Pyrex Glassware, or cannot do so within the time period under the warranty (two years).

117.    Many of the damages resulting from the defective Pyrex Glassware cannot be resolved through the limited remedy replacement, as incidental and consequential damages have already been suffered due to Corelle Brands' conduct as alleged herein.

118.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty replacement, and they seek all remedies allowed by law.

119.    Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received such notice through Plaintiffs who complained to Corelle Brands about the defective Pyrex Glassware, as described above.

120.    Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiffs and Class Members, and failed to provide any form of compensation for the damages resulting from the Defect.

121.    As a result of Corelle Brands' breach of its express written warranties, Plaintiffs and Class Members have suffered damages and have been deprived of the benefit of their bargain.

122.    The amount in controversy of Plaintiffs' and Class Members' claims meet or exceed the sum or value of $50,000.00, and there are more than one hundred Class Members.

123.    Corelle Brands has been afforded a reasonable opportunity to cure its breach of written warranties, including, when Plaintiffs contacted Corelle Brands regarding replacement of the defective Pyrex Glassware.

124.    As a direct and proximate cause of Corelle Brands' breach of written warranties, Plaintiffs and Class members did not receive the benefit of the bargain and suffered damages at

the point of sale stemming from their overpayment for Pyrex Glassware with the Defect in addition to loss of the Product and its intended benefits. Corelle Brands' conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value at the point of sale, costs, including statutory attorneys' fees, and/or other relief as appropriate.

**SECOND CLAIM FOR RELIEF**
**Breach of New York's Express Warranty Statute,**
**N.Y. U.C.C. Law § 2-313**
**(On behalf of Plaintiff Fullerton, Plaintiff Slepian, and the New York Class)**

125.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

126.    In connection with its sale of Pyrex Glassware, Corelle Brands expressly warranted that it was free from defects and suitable for cooking at high temperatures.

127.    The Warranty states: "Corelle Brands, LLC promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

128.    Pyrex Glassware is defectively designed as a whole unit and is covered by Corelle Brands' Limited Warranty, set forth above.

129.    Each Pyrex Glassware product has an identical or substantially identical warranty.

130.    The express written warranties covering Pyrex Glassware were a material part of the bargain between Corelle Brands and consumers. At the time it made these express warranties, Corelle Brands knew of the purpose for which Pyrex Glassware was to be used.

131.    Corelle Brands breached its express warranties by selling Pyrex Glassware that was, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, and could not be safely used for the ordinary purpose of

preparing meals at home. Corelle Brands breached its express written warranties to Plaintiffs and Class Members in that Pyrex Glassware contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

132.    Pyrex Glassware that Plaintiffs and Class Members purchased were subject to the Defect and caused each of them damages including loss of the product, loss of the benefit of their bargain, personal injuries, and property damage.

133.    Corelle Brands expressly warranted in writing that it "promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

134.    Plaintiff Fullerton notified Corelle Brands of its breach of the express warranty shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect. Moreover, Corelle Brands was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

135.    Corelle Brands breached its express warranty to replace the defective Pyrex Glassware when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing Pyrex Glassware.

136.    To the extent that Corelle Brands offers to replace the Pyrex Glassware, the warranty of replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class Members whole because the warranty covers only "promises to replace any Pyrex glass product that *breaks from oven heat*." (Emphasis added). The replacement under the warranty does not apply to all defective Pyrex Glassware—it only applies to Pyrex Glassware that has already manifested the latent Defect and has already failed. The warranty regarding failed or broken Pyrex

Glassware is insufficient to adequately cover all defective Pyrex Glassware, or cannot do so within the time period under the warranty (two years).

137.    Many of the damages resulting from the defective Pyrex Glassware cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Corelle Brands' conduct as alleged herein.

138.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

139.    Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received such notice through Plaintiff Fullerton who complained to Corelle Brands about the defective Pyrex Glassware, as described above.

140.    Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiffs and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

141.    As a direct and proximate cause of Corelle Brands' breach of its express written warranties, Plaintiffs and Class members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for Pyrex Glassware with the Defect in addition to loss of the Product and its intended benefits.

### THIRD CLAIM FOR RELIEF
**Breach of Florida's Express Warranty Statute,**
**Fla. Stat. § 672.313**
**(On behalf of Plaintiff Grau and the Florida Class)**

142.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

143.    In connection with its sale of Pyrex Glassware, Corelle Brands expressly warranted that it was free from defects and suitable for cooking at high temperatures.

144.    The Warranty states: "Corelle Brands, LLC promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

145.    Pyrex Glassware is defectively designed as a whole unit and is covered by Corelle Brands' Limited Warranty, set forth above.

146.    Each Pyrex Glassware product has an identical or substantially identical warranty.

147.    Plaintiff Grau and the Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit consumers of Pyrex Glassware. To the extent Class Members purchased Pyrex Glassware from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Corelle Brands and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer.

148.    The express written warranties covering Pyrex Glassware were a material part of the bargain between Corelle Brands and consumers. At the time it made these express warranties, Corelle Brands knew of the purpose for which Pyrex Glassware was to be used.

149.    Corelle Brands breached its express warranties by selling Pyrex Glassware that was, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, and could not be safely used for the ordinary purpose of preparing meals at home. Corelle Brands breached its express written warranties to Plaintiffs and Class Members in that Pyrex Glassware contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

150.    Pyrex Glassware that Plaintiff and Class Members purchased was subject to the Defect and caused each of them damages including loss of the product, loss of the benefit of their bargain, personal injuries, and property damage.

151.    Corelle Brands expressly warranted in writing that it "promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

152.    Plaintiff Grau notified Corelle Brands of its breach of the express warranty shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect. Moreover, Corelle Brands was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

153.    Corelle Brands breached its express warranty to replace the defective Pyrex Glassware when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing Pyrex Glassware.

154.    To the extent that Corelle Brands offered to replace the defective products, the warranty of replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class Members whole because the warranty covering Pyrex Glassware only "promises to

replace any Pyrex glass product that breaks from oven heat." The replacement under the warranty does not apply to all defective Pyrex Glassware—it only applies to Pyrex Glassware that has already manifested the latent Defect and has already failed. The warranty of replacement of failed or broken Pyrex Glassware is insufficient to adequately cover all Pyrex Glassware, or cannot do so within the time period under the warranty (two years).

155.    Many of the damages resulting from the defective Pyrex Glassware cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Corelle Brands' conduct as alleged herein.

156.    Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

157.    Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received such notice through Plaintiff Fullerton who complained to Corelle Brands about the defective Pyrex Glassware, as described above.

158.    Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiff and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

159.    As a direct and proximate cause of Corelle Brands' breach of its express written warranties, Plaintiff and Class members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for Pyrex Glassware with the Defect.

## FOURTH CLAIM FOR RELIEF
**Breach of Michigan's Express Warranty Statute**
**Mich. Comp. Laws § 440.2313**
**(On behalf of Plaintiff Simon and the Michigan Class)**

160. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

161. In connection with its sale of Pyrex Glassware, Corelle Brands expressly warranted that it was free from defects and suitable for cooking at high temperatures.

162. The Warranty states: "Corelle Brands, LLC promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

163. Pyrex Glassware is defectively designed as a whole unit and is covered by Corelle Brands' Limited Warranty, set forth above.

164. Each Pyrex Glassware product has an identical or substantially identical warranty.

165. Plaintiffs and the Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit consumers of Pyrex Glassware. To the extent Class Members purchased Pyrex Glassware from third-party retailers or received Pyrex Glassware as a donee of a purchaser, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Corelle Brands, third-party retailers, and purchasers.

166. The express written warranties covering Pyrex Glassware were a material part of the bargain between Corelle Brands and consumers. At the time it made these express warranties, Corelle Brands knew of the purpose for which Pyrex Glassware was to be used.

45

167.     Corelle Brands breached its express warranties by selling Pyrex Glassware that was, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, and could not be safely used for the ordinary purpose of preparing meals at home. Corelle Brands breached its express written warranties to Plaintiffs and Class Members in that Pyrex Glassware contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

168.     Pyrex Glassware that Plaintiffs and Class Members purchased were subject to the Defect and caused each of them damages including loss of the product, loss of the benefit of their bargain, personal injuries, and property damage.

169.     Corelle Brands expressly warranted in writing that it "promises to replace any Pyrex glass product that breaks from oven heat, and any Pyrex non-glass accessory item with a manufacturing defect, within TWO YEARS from the date of purchase."

170.     Plaintiff Simon notified Corelle Brands of its breach of the express warranty shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect. Moreover, Corelle Brands was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

171.     Corelle Brands breached its express warranty to replace the defective Pyrex Glassware when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing Pyrex Glassware.

172.     To the extent that Corelle Brands offered to replace the defective products, the warranty of replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class Members whole because the warranty covering Pyrex Glassware only "promises to

replace any Pyrex glass product that breaks from oven heat." The replacement under the warranty does not apply to all defective Pyrex Glassware—it only applies to Pyrex Glassware that has already manifested the latent Defect and has already failed. The warranty of replacement of failed or broken Pyrex Glassware is insufficient to adequately cover all Pyrex Glassware, or cannot do so within the time period under the warranty (two years).

173.    Many of the damages resulting from the defective Pyrex Glassware cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Corelle Brands' conduct as alleged herein.

174.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

175.    Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received such notice through Plaintiff Fullerton who complained to Corelle Brands about the defective Pyrex Glassware, as described above.

176.    Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiffs and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

177.    As a direct and proximate cause of Corelle Brands' breach of its express written warranties, Plaintiffs and Class members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for Pyrex Glassware with the Defect.

**FIFTH CLAIM FOR RELIEF**
**Breach of New York's Implied Warranty of Merchantability Statute,**
**N.Y. U.C.C. § 2-314**
**(On behalf of Plaintiff Fullerton, Plaintiff Slepian, and the New York Class)**

178.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

179.     Pyrex Glassware purchased by Plaintiffs Fullerton and Slepian and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

180.     All of Pyrex Glassware sold by Corelle Brands left Corelle Brands' facilities and control with a Defect caused by a defective design incorporated into the manufacture of Pyrex Glassware.

181.     The Defect placed and/or places Plaintiffs and Class Members at risk of injury and/or property damage through the use of Pyrex Glassware in their homes.

182.     The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Corelle Brands and consumers, including Plaintiffs and the Class Members.

183.     Notwithstanding the aforementioned duty, at the time of delivery, Corelle Brands breached the implied warranty of merchantability in that Pyrex Glassware is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

184. Corelle Brands knew, or should have known, that Pyrex Glassware posed a safety risk and was defective, and that it breached the implied warranties at the time it sold Pyrex Glassware to Plaintiffs and Class Members or otherwise placed them into the stream of commerce.

185. Plaintiff Simon and the Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit consumers of Pyrex Glassware. To the extent Class Members purchased Pyrex Glassware from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Corelle Brands and third-party retailers.

186. As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members bought Pyrex Glassware without knowledge of the Defect or the serious safety risks.

187. As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members purchased unsafe Pyrex Glassware products that were not fit to be used for their intended purpose of preparing food in a residential setting.

188. Plaintiff Fullerton notified Corelle Brands of its breach of the implied warranties shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect.

189. Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing.

Corelle Brands also received notice through Plaintiff Fullerton who complained to Corelle Brands about the Defect as described above.

190.   Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiffs and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

191.   As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members have suffered damages.

### SIXTH CLAIM FOR RELIEF
**Breach of Florida's Implied Warranty of Merchantability Statute,
Fla. Stat. § 672.314
(On behalf of Plaintiff Grau and the Florida Class)**

192.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

193.   Pyrex Glassware purchased by Plaintiff Grau and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

194.   All of Pyrex Glassware sold by Corelle Brands left Corelle Brands' facilities and control with a Defect caused by a defective design incorporated into the manufacture of Pyrex Glassware.

195.   The Defect placed and/or places Plaintiff and Class Members at risk of injury and/or property damage through the use of Pyrex Glassware in their homes.

196.   The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied

warranty of merchantability is part of the basis of the bargain between Corelle Brands and consumers, including Plaintiffs and the Class Members.

197.     Notwithstanding the aforementioned duty, at the time of delivery, Corelle Brands breached the implied warranty of merchantability in that Pyrex Glassware is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

198.     Corelle Brands knew, or should have known, that Pyrex Glassware posed a safety risk and was defective, and that it breached the implied warranties at the time it sold Pyrex Glassware to Plaintiffs and Class Members or otherwise placed them into the stream of commerce.

199.     Plaintiff and Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware from Corelle Brands, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit the ultimate consumers. To the extent that Class Members purchased Pyrex Glassware from third-party retailers, privity is not required because Plaintiffs and Class Members are intended third-party beneficiaries of the contracts between Corelle Brands and the third-party retailers.

200.     As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiff and Class Members bought Pyrex Glassware without knowledge of the Defect or the serious safety risks.

201.     As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiff and Class Members purchased unsafe Pyrex Glassware products that were not fit to be used for their intended purpose of preparing food in a residential setting.

202.   Plaintiff Grau notified Corelle Brands of its breach of the implied warranties shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect.

203.   Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received notice through Plaintiff Grau who complained to Corelle Brands about the Defect as described above.

204.   Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiff and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

205.   As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiff and Class Members have suffered damages.

## SEVENTH CLAIM FOR RELIEF
**Breach of Michigan's Implied Warranty of Merchantability Statute**
**Mich. Comp. Laws § 440.2314**
**(On behalf of Plaintiff Simon and the Michigan Class)**

206.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

207.   Pyrex Glassware purchased by Plaintiff Simon and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

208.   All of Pyrex Glassware sold by Corelle Brands left Corelle Brands' facilities and control with a Defect caused by a defective design incorporated into the manufacture of Pyrex Glassware.

209.    The Defect placed and/or places Plaintiffs and Class Members at risk of injury and/or property damage through the use of Pyrex Glassware in their homes.

210.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Corelle Brands and consumers, including Plaintiffs and the Class Members.

211.    Notwithstanding the aforementioned duty, at the time of delivery, Corelle Brands breached the implied warranty of merchantability in that Pyrex Glassware is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

212.    Corelle Brands knew, or should have known, that Pyrex Glassware posed a safety risk and was defective, and that it breached the implied warranties at the time it sold Pyrex Glassware to Plaintiffs and Class Members or otherwise placed them into the stream of commerce.

213.    Plaintiff Simon and the Class Members have privity of contract with Corelle Brands through their purchase of Pyrex Glassware, and through the express written and implied warranties that Corelle Brands issued to its customers. Corelle Brands' warranties accompanied Pyrex Glassware and were intended to benefit consumers of Pyrex Glassware. To the extent Class Members purchased Pyrex Glassware from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Corelle Brands and third-party retailers.

214.    As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members bought Pyrex Glassware without knowledge of the Defect or the serious safety risks.

215.    As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members purchased unsafe Pyrex Glassware products that were not fit to be used for their intended purpose of preparing food in a residential setting.

216.    Plaintiff Simon notified Corelle Brands of its breach of the implied warranties shortly after their Pyrex Glassware failed to perform as warranted as a result of the Defect.

217.    Upon information and belief, Corelle Brands received further notice and has been on notice of the Defect and of its breaches of warranties through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing. Corelle Brands also received notice through Plaintiff Simon who complained to Corelle Brands about the Defect as described above.

218.    Despite having notice and knowledge of the Defect, Corelle Brands failed to provide Defect-free Pyrex Glassware to Plaintiffs and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

219.    As a direct and proximate result of Corelle Brands' breach of the implied warranties, Plaintiffs and Class Members have suffered damages.

### EIGHTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On behalf of Plaintiffs and all Classes)**

220.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

221.    This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and Corelle Brands do not govern the subject matter of the disputes with Corelle Brands, or that Plaintiffs do not have standing to assert any contractual claims against Corelle Brands.

222.    Plaintiffs and Class Members conferred a benefit on Corelle Brands, and Corelle Brands had knowledge of this benefit. By its wrongful acts and omissions described herein, including selling the defective Pyrex Glassware, Corelle Brands was unjustly enriched at the expense of Plaintiffs and Class Members.

223.    Plaintiffs' and Class Members' detriment and Corelle Brands' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

224.    It would be inequitable for Corelle Brands to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling Pyrex Glassware.

225.    Plaintiffs and Class Members seek restitution from Corelle Brands and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Corelle Brands from its wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

## NINTH CLAIM FOR RELIEF
### Negligence
### (On behalf of Plaintiffs and all Classes)

226.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

227.     Corelle Brands owed a duty to Plaintiffs and Class Members to design, manufacture, market, and sell its Pyrex Glassware with reasonable care and in workmanlike fashion.

228.     Corelle Brands breached that duty by designing and/or manufacturing Pyrex Glassware that is defective.

229.     Plaintiffs and Class Members suffered damages as a result of this breach.

230.     Corelle Brands' breach proximately caused damages to Plaintiffs and Class Members.

### TENTH CLAIM FOR RELIEF
**Violation of New York's Unfair and Deceptive Trade Practices Law,
N.Y. Gen. Bus. Law § 349, et seq.
(On behalf of Plaintiff Fullerton, Plaintiff Slepian, and the New York Class)**

231.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

232.     The sale and distribution of Pyrex Glassware in New York was a consumer-oriented act and therefore falls under the New York deceptive acts and practices statute, N.Y. Gen. Bus. Law § 349.

233.     Corelle Brands violated General Business Law Section 349 by representing that Pyrex Glassware products had characteristics, uses, or benefits that they did not have, or that Pyrex Glassware products were of a particular standard, quality, or grade that they were not.

234.     Corelle Brands' scheme and concealment of the true characteristics of the Defect were material to Plaintiffs and New York Class members, as Corelle Brands intended. Had they known the truth, Plaintiffs and New York Class members would not have purchased Pyrex Glassware products, or, if the products' true nature had been disclosed and mitigated, would have paid significantly less for them.

56

235. Due to the latent nature of the Defect, Plaintiffs Fullerton and Slepian and New York Class members had no way of discerning or otherwise learning that Corelle Brands' representations were false and misleading and that Corelle Brands had concealed or failed to disclose facts relevant to the Defect in their Pyrex Glassware products. New York Class members did not, and could not, unravel Corelle Brands' deception on their own.

236. Upon information and belief, Corelle Brands received notice and has been on notice of the Defect through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing.

237. Corelle Brands had an ongoing duty to Plaintiffs and New York Class members to refrain from unfair and deceptive practices under General Business Law Section 349 in the course of their business. Specifically, Corelle Brands owed Plaintiffs and New York Class members a duty to disclose all material facts concerning the Defect because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs and New York Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

238. Corelle Brands' violations present a continuing risk to Plaintiffs and New York Class members, as well as to the general public. Corelle Brands' unlawful acts and practices complained of herein affect the public interest.

239. As a result of Corelle Brands' statutory violations, Plaintiffs and New York Class members sustained injuries and are entitled to relief under the Act.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of New York's False Advertising Law,**
**N.Y. Gen. Bus. Law § 350, et seq.**
**(On behalf of Plaintiff Fullerton, Plaintiff Slepian, and the New York Class)**

240. Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

241. Corelle Brands was engaged in the "conduct of business, trade or commerce." N.Y. Gen. Bus. § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a.

242. Corelle Brands caused to be made or disseminated through New York—via advertising, marketing, and other publications—statements and omissions that were untrue or misleading to Plaintiffs Fullerton and Slepian and New York Class members.

243. Corelle Brands made numerous material misrepresentations and omissions of fact with intent to mislead and deceive New York Class members concerning Pyrex Glassware, particularly with regard to the Defect. Specifically, Corelle Brands intentionally concealed and suppressed material facts concerning the quality of Pyrex Glassware in order to intentionally and grossly defraud and mislead Plaintiffs and New York Class members concerning the Defect.

244. The misrepresentations and omissions set forth above were material and likely to deceive a reasonable consumer. The inherent Defect was undetectable to the ordinary consumer.

245. Corelle Brands intentionally and knowingly misrepresented material facts regarding Pyrex Glassware with intent to mislead Plaintiffs and New York Class members.

246. Corelle Brands' false advertising was likely to and, in fact, did deceive reasonable consumers including Plaintiffs and New York Class members about the true characteristics of the Defect.

247. Upon information and belief, Corelle Brands received notice and has been on notice of the Defect through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing.

248. Corelle Brands' violations of General Business Law Section 350 present a continuing risk to Plaintiffs and to the general public. Corelle Brands' deceptive acts and practices affect the public interest.

249. Pyrex Glassware products do not perform as advertised and make them far less valuable than advertised.

250. Plaintiffs and New York Class members who purchased Pyrex Glassware either would not have purchased the Glassware at all or else paid less for Pyrex Glassware but for Corelle Brands' false advertising in violation of General Business Law Section 350.

251. Plaintiffs and New York Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of Corelle Brands' false advertising in violation of General Business Law Section 350, including, but not limited to, purchasing or leasing a diminished value or complete lost value for Pyrex Glassware purchased or leased.

252. Plaintiffs and New York Class members have suffered lost or diminished use, enjoyment, and utility of their Pyrex Glassware along with suffering annoyance, aggravation, and inconvenience resulting from Corelle Brands' violations of General Business Law Section 350.

253. Plaintiffs and New York Class members seek monetary relief against Corelle Brands measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500.00 each for New York Class member. N.Y. Gen. Bus.

Law § 350-e. Because Corelle Brands' conduct was committed willingly and knowingly, Plaintiff and New York Class Members are entitled to recover three times actual damages, up to $10,000.00.

254.    Plaintiffs and New York Class Members also seek an order enjoining Corelle Brands' false advertising and further seeks attorneys' fees and any other just and proper relief under General Business Law Section 350.

**TWELFTH CLAIM FOR RELIEF**
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. Ann. § 501.201, *et seq.***
**(On Behalf of Plaintiff Grau and the Florida Class)**

255.    Plaintiffs re-allege and incorporate each and incorporate each and every allegation set forth above as if fully written herein.

256.    FDUTPA states in pertinent part that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204(1)

257.    Corelle Brands engaged in unfair and deceptive acts in violation of FDUTPA, Fla. Stat. Ann. § 501.204, when Corelle Brands failed to disclose that their Pyrex Glassware demonstrated inadequate thermal shock resistance for use in cooking and baking and that their Pyrex Glassware was susceptible to shattering when exposed to temperature changes commonly experienced when removing glassware from an oven. Corelle Brands further engaged in unfair and deceptive acts for purposes of FDUTPA when, in response to requests for replacement products after a shattering event, they responded by simply referring Pyrex owners to care and use instructions and implying that owners were at fault.

258.    Upon information and belief, Corelle Brands received notice and has been on notice of the Defect through customer warranty claims reporting problems with Pyrex Glassware,

consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing.

259. Plaintiff Grau and Florida Class members relied on Corelle Brands' misrepresentations when purchasing their Pyrex Glassware. Had they known that those representations were false, she and class members would not have purchased Pyrex Glassware, or else would have paid significantly less for the Pyrex Glassware.

260. Plaintiffs and the class seek all damages permitted by law in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF
### Violation of Michigan's Consumer Protection Act,
### Mich. Comp. Laws § 445.901, et seq.
### (On behalf of Plaintiff Simon and the Michigan Class)

261. Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

262. Plaintiff Simon, the Michigan Class members, and Corelle Brands are persons as defined by Michigan's Consumer Protection Act. Mich. Comp. Laws § 445.902(d).

263. Corelle Brands engaged in trade or commerce as defined by Michigan's Consumer Protection Act by advertising, providing, offering, or distributing Pyrex Glassware in the State of Michigan. Mich. Comp. Laws § 445.902(g).

264. Corelle Brands' scheme to conceal the true characteristics of the Defect was material to Plaintiffs and Michigan Class members, as Corelle Brands intended. Had they known the truth, Plaintiffs and Michigan Class members would not have purchased Pyrex Glassware products, or, if the products' true nature had been disclosed and mitigated, would have paid significantly less for them.

265.    Due to the latent nature of the Defect, Plaintiff Simon and the Michigan Class members had no way of discerning or otherwise learning that Corelle Brands' representations were false and misleading and that Corelle Brands had concealed or failed to disclose facts relevant to the Defect in their Pyrex Glassware products. Michigan Class members did not, and could not, unravel Corelle Brands' deception on their own.

266.    Upon information and belief, Corelle Brands received notice and has been on notice of the Defect through customer warranty claims reporting problems with Pyrex Glassware, consumer complaints at various sources, numerous lawsuits filed against it over failures of Pyrex Glassware, and its own internal and external testing.

267.    Corelle Brands' violations present a continuing risk to Plaintiff and Michigan Class members, as well as to the general public. Corelle Brands' unfair, unconscionable, or deceptive methods, acts, or practices complained of herein affect the public interest.

268.    As a result of Corelle Brands' conduct, Plaintiff and the Michigan Class members were harmed and suffered actual damages as a result of Corelle Brands' unfair, unconscionable, or deceptive methods, acts, or practices. Had Corelle Brands disclosed the Defect to consumers, Plaintiff and the Michigan Class members would not have purchased the Pyrex Glassware products, or else would have paid significantly less for them.

269.    As a result of Corelle Brands' statutory violations, Plaintiff and the Michigan Class members sustained injuries and are entitled to relief under the Act.

270.    Plaintiff and the Michigan Class members seek damages, as well as declarative and injunctive relief prohibiting Corelle Brands from continuing these unlawful practices, pursuant to Mich. Comp. Laws § 445.911.

271. Plaintiff and the Michigan Class members seek an award for the actual damages caused by Corelle Brands' unfair, unconscionable, or deceptive methods, acts, or practices and any other relief the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A. An Order certifying this action as a class action on behalf of the Nationwide Class and the State Classes;

B. An Order appointing Plaintiffs as Class representatives, and appointing the undersigned counsel as Class Counsel;

C. A Declaration that Pyrex Glassware is defective;

D. An Order awarding injunctive relief by requiring Corelle Brands, at its own expense, to issue corrective actions, including notification, recall, inspection, and, as necessary, replacement of Pyrex Glassware;

E. Payment to Plaintiffs and all Class Members of all damages associated with or caused by the defective Pyrex Glassware, in an amount to be proven at trial;

F. An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G. Interest as provided by law, including, but not limited to, pre-judgment and post-judgment interest as provided by rule or statute; and

H. Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: June 14, 2018

**RESPECTFULLY SUBMITTED,**

s/Gregory F. Coleman

Gregory F. Coleman, TN Bar #014092
*Member of the Trial Bar, USDC, N.D. Illinois*
Adam A. Edwards (*pro hac vice* to be filed)
Mark E. Silvey (*pro hac vice* to be filed)
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com

Edward A. Wallace
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile:  (312) 346-0022
eaw@wexlerwallace.com

Paul C. Peel (*pro hac vice* to be filed)
**FARRIS BOBANGO PLC**
999 S. Shady Grove Road, Suite 500
Memphis Tennessee 38120
Telephone: (901) 259-7100
Facsimile: (901) 259-7150
ppeel@farris-law.com

Daniel K. Bryson (*pro hac vice* to be filed)
Patrick M. Wallace (*pro hac vice* to be filed)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
dan@wbmllp.com
pat@wbmllp.com

64