# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRICIA FULLERTON, *et al.*, | Civil Action No. 1:18-cv-4152 |
| Plaintiffs, | The Honorable John Robert Blakey |
| v. | |
| CORELLE BRANDS, LLC (previously D/B/A World Kitchen, LLC), *et al.*, | |
| Defendants. | |
| MARCIA SCHUTTE, *et al.*, | Civil Action No. 1:18-cv-4198 |
| Plaintiffs, | |
| v. | |
| CORELLE BRANDS, LLC (previously D/B/A World Kitchen, LLC), *et al.*, | |
| Defendants. | |

## NOTICE OF FILING SUPPLEMENTAL AUTHORITY

Pursuant to the Court's Minute Order on July 12, 2019 [Fullerton Dkt. 57; Schutte Dkt. 63], Defendants Corelle Brands LLC, F/K/A World Kitchen, LLC, and Corelle Brands Holdings Inc., F/K/A WKI Holding Company, Inc. hereby submit the Memorandum Opinion and Order issued on July 2, 2019, by the United States District Court for the Northern District of Illinois in *Kubilius v. Barilla America, Inc.*, No. 18 C 6656 (attached), in support of their pending Motion to Dismiss the Complaint and Strike the National Class Allegations [Fullerton Dkt. 37; Schutte Dkt. 43].

1

Dated: July 12, 2019                              Respectfully submitted,

/s/ Suyash Agrawal
Leonard A. Gail
Suyash Agrawal
Massey & Gail LLP
50 E. Washington Street, Suite 400
Chicago, IL 60602
(312) 379-0949
lgail@masseygail.com
sagrawal@masseygail.com


/s/ Frances E. Bivens
Frances E. Bivens*
Andrew S. Gehring*
Alexa B. Lutchen*
Davis Polk & Wardwell LLP
450 Lexington Ave
New York, NY 10017
(212) 450-4000
*pro hac vice

*Attorneys for Corelle Brands LLC
and Corelle Brands Holdings Inc.*

**2019 WL 2861886**
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Lukas KUBILIUS, on behalf of himself
and others similarly situated, Plaintiff,
v.
BARILLA AMERICA, INC., Defendant.

No. 18 C 6656
|
Signed 07/02/2019

**Attorneys and Law Firms**

C.K. Lee, Lee Litigation Group, PLLC, Chicago, IL, for Plaintiff.

Steven P. Blonder, Marissa Lynn Downs, Much Shelist P.C., Chicago, IL, for Defendant.

MEMORANDUM OPINION AND ORDER

Elaine E. Bucklo, United States District Judge

 *1 Lukas Kubilius is a New Yorker who claims he was duped into buying a jar of pasta sauce from a New York supermarket because Barilla the Illinois company that markets the sauce billed it as having "no preservatives," even though, as the product label disclosed, it contains citric acid an ingredient known to function as a preservative. Kubilius sues Barilla, claiming that he and a nationwide class are entitled to damages for this alleged deception (and the deception he claims was visited on the class by Barilla's similar marketing of other pasta sauces), as well as injunctive relief under Illinois' Consumer Fraud and Deceptive Practices Act ("ICFA") and the "substantively similar consumer protection laws" of the remaining forty-nine states and the District of Columbia. Alternatively, Kubilius asserts claims on behalf of a New York class under that state's statutes prohibiting false advertising and deceptive trade practices. Finally, Kubilius claims common law fraud on behalf of nationwide or New York classes.

Defendant move to dismiss the complaint and to strike its class allegations on four grounds: that Illinois' consumer protection statute cannot be enforced extra-territorially; that a nationwide class action would be unmanageable because of differences among the various states' fraud and consumer protection laws; that plaintiff has not adequately alleged either a false statement or a resulting injury; and that plaintiff lacks standing to seek injunctive relief or pursue claims relating to items he did not purchase. For the following reasons, I grant the motion in part.

I begin with plaintiff's claim under ICFA, which, as his own authority holds squarely, has no extra-territorial application. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 2d 801, 853 (Ill. 2005). Accordingly, to govern plaintiff's New York purchase of defendant's pasta sauce, "the bulk of the circumstances" making up that transaction would have to have occurred in Illinois. Plainly, that is not the case.

In *Avery*, the Supreme Court of Illinois held that the state legislature "did not intend the [ICFA] to apply to fraudulent transactions which take place outside of Illinois." *Id.* The court acknowledged that "it can be difficult to identify the situs of a consumer transaction when ... the transaction is made up of components that occur in more than one state." *Id.* In such cases, the *Avery* court explained, courts must consider "[t]he place of injury or deception" among other factors to decide whether "the circumstances relating to the transaction occur primarily and substantially" in Illinois. *Id.* at 854.

But this is not such a case. In *Avery*, the court considered whether ICFA applied to a claim of insurance fraud based on misrepresentations an Illinois insurer allegedly made to the plaintiffs in four separate documents they received at various times and in various locations over the course of their dealings with the defendant. *Id.* at *837-38. Here, by contrast, plaintiff's ICFA claim is based not on a course of dealing with defendant but on a single statement he claims to have seen on a single product label during a straightforward retail purchase transacted in New York. Because it is not "difficult to identify the situs" of that transaction, *id.* at 853, I need not consider any other factors to conclude that the ICFA does not apply to plaintiff's purchase.

 *2 Also apparent from the complaint is that plaintiff's statutory and common law consumer fraud claims cannot feasibly be maintained as a nationwide class action.

Plaintiff's first count asserts, on behalf of a nationwide class, violations of the ICFA "in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent the [ICFA] does not reach the claims of out-of-state Class members." As explained above, the ICFA does not apply to the claims of class members who purchased their products outside of Illinois. As a federal court sitting in Illinois, I apply Illinois' choice-of-law rule, which uses the "most significant relationship" test to determine which state's substantive law governs plaintiff's and the class claims. *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017) (Gettleman, J.) (citing *Ingersoll v. Klein*, 262 N.E. 2d 593 (Ill. 1970)). This test considers "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id.* For substantially the reasons noted in the previous section, application of this test to plaintiff's allegations establishes that New York law governs his claim. And, as plaintiff acknowledges, the claims of the absent class members will be governed by the laws of all fifty states and the District of Columbia.

The Seventh Circuit has made clear that actions such as the one plaintiff proposes are disfavored. As the court explained in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002), "[n]o class action is proper unless all litigants are governed by the same legal rules." In that case, the plaintiffs sought to pursue consumer fraud claims on a nationwide class basis against the manufacturers of certain Ford automobiles and certain Firestone tires. The court declined to certify the proposed nationwide classes, noting that the commonality and superiority requirements of Fed. R. Civ. P. 23 cannot be met unless "uniform law" governs the class's claims. *Id.* That was not the case, the court explained, because the plaintiffs' claims implicated the consumer protection laws of all fifty states. The court concluded: "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.* at 1018.

Plaintiff does not grapple with (or even mention) the court's holding in *In re Bridgestone/Firestone*. Instead, he argues that it is too soon to tell whether nationwide classes can be certified, and that a proper determination of the issue must await discovery and a motion for class certification. Plaintiff also insists that the consumer protection and fraud laws of the various states are "substantively similar," and that to the extent they are materially different, any differences can be dealt with by the creation of subclasses. Neither argument avails.

First, the cases plaintiff cites in which courts declined to strike class allegations prior to discovery do not persuade me to take that course here. For example, plaintiff highlights the court's decision in *Sheeley v. Wilson Sporting Goods Co.*, No. 17 C 3076, 2017 WL 5517352 (N.D. Ill. Nov. 17, 2017), declining to strike class allegations relating to consumer fraud and warranty claims on the basis that different states' laws would govern these claims. The court held that a motion to dismiss was not the appropriate vehicle for determining whether class certification was appropriate, and that discovery was necessary to adjudicate the question under Rule 23. *Id.* at *4. But the court did not explain how discovery would bear on the need for uniformity in the law governing the class claims a legal requirement for class certification. *See In re Bridgestone/Firestone*, 288 F.3d at 1015, 1018. While it is true that the Rule 23 inquiry requires discovery when class certification turns on the resolution of disputed facts, "sometimes the complaint will make it clear that class certification is inappropriate." *Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Indeed, the text of Rule 23 provides that the determination of whether a class should be certified must be made "at an early practicable time," which may be at the pleadings stage. *Id.* (noting that "the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23."). In particular, where a defendant raises a legal challenge to class certification, courts in the Seventh Circuit and elsewhere have held that resolution of the issue may be appropriate on the pleadings. *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943 (6th Cir. 2011) ("[the plaintiffs] do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification."); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (the court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination");

*Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (Gettleman, J.) ("when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained."); *Cornette v. Jenny Garton Ins. Agency, Inc.,* No. 2:10 CV 60, 2010 WL 2196533 at *4 (N.D.W. Va. May 27, 2010). *See also Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006) (authority to review class allegations on the pleadings derives from Rule 23(c)(1)(A) and (d)(4) and need not await motion for class certification).

**\*3** Second, while subclasses can sometimes facilitate the management of multi-state class actions requiring application of dissimilar state laws, plaintiff's superficial argument fails to account for the various axes along which state consumer protection laws differ. Plaintiff homes in on just one of the differences defendant highlights — whether a plaintiff must show "reliance" on the alleged fraud — and argues that "[e]ven if demonstrating reliance proves to be a potential obstacle, the court can create two subclasses encompassing each of the two kinds of state law." But defendant identifies several additional fronts on which state laws vary, including the level of intent the plaintiff must establish; the availability of affirmative defenses such as bona fide error; the procedural requirements that must be satisfied prior to filing a claim; the circumstances in which a private right of action is available; and the limitations period governing such claims. *See* Mem. at 5-7. Given not only the number of jurisdictions at issue but also the multitude of dimensions on which state consumer protection laws differ substantively and procedurally, it is difficult to imagine a reasonable number of subclasses could be used to make the class action plaintiff proposes manageable. *See Block v. Abbott Labs.*, No. 99 C 7457, 2002 WL 485364, at *5 (N.D. Ill. Mar. 29, 2002) (Anderson, J.) (observing eight categories of differences among state consumer protection laws). Conspicuously, plaintiff cites no case in which a nationwide consumer class of the kind he proposes has been certified, with or without subclasses. To the contrary, in each of the cases plaintiff cites from this district, the court either denied class certification or terminated the case prior to certification. *See Mednick v. Precor*, No. 14 C 3642, 2016 WL 3213400 (N.D. Ill. June 10, 2016) (denying class certification); *Sheeley*, No. 17 C 3076 at DN 45 (N.D. Ill. June 7, 2019) (dismissing case pursuant to stipulation); *Wagner v. General Nutrition Corp.*, No. 16 C 10961 at DN 46 (N.D. Ill. July 26, 2018) (dismissing case pursuant to stipulation); *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17 C 5828 at DN 62 (N.D. Ill. Jan. 1, 2019) (terminating case pursuant to voluntary dismissal). Because it is plain on the face of the complaint that plaintiff's consumer fraud claims "must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable," *In re Bridgestone/Firestone Inc.*, 288 F.3d at 1018, and plaintiff's simplistic, "two sub-class" alternative does not persuade me that absent class members can be sorted into a reasonable number of subclasses whose claims are governed by materially identical legal standards. *Cf. Muehlbauer*, 431 F. Supp. 2d at 872 (multi-state class not unmanageable because "[e]ven though plaintiffs here seek to represent the citizens from the vast majority of states, they have grouped their claims according to common legal elements"). As other courts in this district have observed, a nationwide class asserting claims based on each state's consumer fraud statutes presents a "logistical and procedural nightmare." *In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig.*, 14-CV-5696, 2017 WL 1196990, at *52 (N.D. Ill. Mar. 31, 2017) (quoting *Block,* 2002 WL 485364, at *5). I agree. Plaintiff's nationwide class allegations are stricken.

I now turn to defendant's argument that plaintiff lacks standing to pursue the claims of absent class members who purchased products that he did not himself purchase but that likewise bore labels stating "no preservatives" alongside ingredients lists that included citric acid. District courts in this district and across the country are divided on this question, with some courts holding that the "irreducible constitutional minimum of Article III standing," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), cabins class representatives to claims based on the exact products they purchased, *see, e.g., Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017); *Kisting v. Gregg Appliances*, No. 16 CV 141, 2016 WL 5875007, at *3-*4 (E.D. Wis. Oct 7, 2016) (citing cases). Nevertheless, the majority of courts have held that class representatives may represent class members who purchased "substantially similar products." *See, e.g., Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018); *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017). In my view, courts that have interpreted Article III as requiring an identity of products overread the Constitution's "injury-in-fact" requirement.

As the Supreme Court reiterated in *Spokeo*, Article III requires a plaintiff to establish that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." 136 S. Ct. at 1547. The first prong requires a plaintiff to show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). While the Seventh Circuit has made clear that a class representative cannot "piggy-back on the injuries of the unnamed class members" to acquire standing "through the back door of a class action," *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002), I cannot discern any meaningful way in which a consumer who purchases "Traditional" pasta sauce that contains citric acid and claims to have been deceived by the label's "no preservatives" representation because citric acid is, in fact, a preservative suffers a distinct injury from a consumer who purchases "Chunky Traditional" pasta sauce that contains citric acid and claims to have been deceived by the same "no preservatives" representation on the same theory of falseness. *See Ulrich v. Probalance, Inc.,* No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (Alonso, J.) (no meaningful difference between the injuries suffered by consumers of two products sharing the "specific component" challenged by the plaintiff's claims). Certainly nothing in *Payton* suggests any grounds for distinguishing between plaintiff's injury and the injury suffered by consumers of the other sauce products he identifies in his complaint.

*\*4* This leaves only two issues: whether plaintiff has articulated a cognizable injury or a false or misleading statement. Of course, having determined that plaintiff's nationwide class allegations cannot stand and that his individual claims (like his claims on behalf of a New York class) are governed by New York law, that is the law I apply in considering the adequacy of his allegations. My review of the issue is facilitated by plaintiff's submission of *Quiroz v. Beaverton Foods, Inc.*, No. 17-CV-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019), a decision issued after briefing on defendant's motion was complete. *Quiroz* is indeed on all fours with the present case: Quiroz, represented by the same counsel as Kubilius, filed a putative class action against the manufacturer of Inglehoffer Original Stone Ground Mustard alleging that the defendant's use of labels stating that the product contains "No Preservatives" is misleading because the label also discloses that the product contains citric acid. Many paragraphs in the two complaints are identical. Like plaintiff, Quiroz asserts alternative nationwide and New York class claims for violation of NY GBL § 349 (deceptive business practices) and NY GBL § 350 (false advertising) and each state's consumer protection laws ("to the extent New York consumer protection laws are inapplicable to out-of-state Class members"), as well as for common law fraud.

The *Quiroz* defendant likewise argued that the plaintiff had failed to allege either a cognizable injury or a material representation under GBL §§ 349 and 350. The court rejected both arguments. With respect to injury, the court held that the plaintiff did "not need to provide a comparison product in order to support her price premium theory," declining to follow the court's contrary conclusion in *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016). *Quiroz*, 2019 WL 1473088, at *9. The court observed that *Izquierdo* defendant's central authority in this case as well "contradicts the weight of the law" in the Second Circuit. *Id.* (quoting *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017)). Indeed, the *Greene* court observed that courts applying GBL §§ 349 and 350 "routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Id.* (citing cases). I see no reason to depart from the majority view that allegations such as plaintiff's are sufficient to state an injury under NY GBL §§ 349 and 350. I also join the *Quiroz* court in rejecting the argument for which defendant cites no legal authority that plaintiff was required to plead facts indicating that citric acid "functions as a preservative" in defendant's product. *Quiroz*, 2019 WL 1473088, at *7.

For the foregoing reasons, defendant's motion to strike and dismiss the amended complaint is granted in part. Plaintiff's ICFA claim is dismissed, as are all claims he asserts on behalf of a nationwide class. Defendant's motion is denied with respect to plaintiff's claims under New York GBL §§ 349 and 350 the common law of fraud on behalf of himself and a class of New York residents who purchased the products identified in plaintiff's amended complaint.

**All Citations**

Slip Copy, 2019 WL 2861886

Footnotes

1   I note that the *Quiroz* court dismissed the plaintiff's claim for fraud under the common law of New York as inadequately pled, but defendant does not challenge plaintiff's fraud claim on that basis.

---

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.