# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TRICIA FULLERTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CORELLE BRANDS, LLC (previously d/b/a World Kitchen, LLC), *et al.*,<br><br>Defendants. | Case No. 18-cv-4152<br><br>Judge John Robert Blakey |
| MARCIA SCHUTTE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CORELLE BRANDS, LLC (previously d/b/a World Kitchen, LLC), *et al.*,<br><br>Defendants. | Case No. 18-cv-4198<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This consolidated class action involves seven plaintiffs from six different states suing Defendants Corelle Brands LLC, f/k/a World Kitchen, LLC, and Corelle Brands Holdings Inc., f/k/a WKI Holding Company, Inc. (collectively, "Corelle") for various claims arising from the allegedly defective manufacturing of Pyrex glassware. Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Defendants also move to strike portions of the Consolidated Amended Complaint under Federal Rule of Civil Procedure 12(f).

1

For the reasons explained below, this Court grants in part and denies in part Defendants' motion.

## I.      Background

### A.      The Parties

This putative class action arises from a change in the glass used to manufacture Pyrex glassware (the Products).   The following facts come from Plaintiffs' First Amended Complaint, [26], and are accepted as true.[1]

Defendants currently manufacture and market the Products.   *Id*. ¶ 28. Corning Incorporated originally developed and manufactured the Products. *Id*. ¶¶ 20–23. Although Corning no longer manufacturers the Products, it licenses the Pyrex name to Corelle.   *Id*.

Beginning in the early 1900s, Corning manufactured the Products using borosilicate glass.  *Id*. ¶ 34.  This glass is extremely resistant to thermal shock caused by sudden temperature changes.   *Id*. ¶¶ 4, 35–37.   For that reason, when manufactured using borosilicate glass, the Products are ideal for cooking because the same glass container can be used for cooking and serving without shattering, which does not hold true of most glassware. *Id*. ¶¶ 36–37.  Capitalizing on this fact, Corning advertised the Products as being suitable for use from the "ice-box to oven" and to

---

[1] As this case is a consolidated case, Defendants filed identical motions to dismiss the Consolidated Amended Class Action in both cases.   Memorandum in Support of Motion to Dismiss, *Fullerton v. Corelle Brands, LLC*, Case No. 1:18-cv-4152 (No. 38); Memorandum in Support of Motion to Dismiss, *Schutte v. Corelle Brands, LLC*, Case No. 1:18-cv-4198 (No. 44).  For simplicity, this Court references the docket numbers of the filings in *Fullerton v. Corelle Brands, LLC*, Case No. 1:18-cv-4152.

"Bake in a glass!" *Id*. ¶¶ 64–66. Eventually Pyrex bakeware became a "household name" and gained a strong reputation among consumers. *Id*. ¶ 3.

Plaintiffs are consumers living in multiple states: New York, Florida, Michigan, Illinois, Ohio, and Massachusetts. *Id*. ¶¶ 13–19. Plaintiffs purchased or received the Products and used them for cooking. *Id*. ¶¶ 92–118. When Plaintiffs used the Products, they experienced thermal breakage and the Products shattered. *Id*. Plaintiffs allege that the Products suffer from a latent defect. *Id*. ¶¶ 5, 9. Based upon this alleged defect, Plaintiffs assert various contract, consumer protection, and unjust enrichment claims. *Id*. ¶¶ 135–466. None allege personal injury. *Id*.

B.  <u>The Switch from Borosilicate Glass to Soda Lime Glass</u>

At some point starting "several decades ago," *id*. ¶ 38, Corning, and later Corelle, began manufacturing the Products using soda lime glass instead of borosilicate, *id*. Significantly, soda lime glass has a higher coefficient of thermal expansion than borosilicate glass. *Id*. ¶¶ 42–46. Practically speaking, this means that soda lime glass expands more when heated. *Id*. ¶ 44. In turn, Plaintiffs allege that because soda lime glass expands more when heated, it is significantly more prone to shattering or breaking when exposed to rapid temperature changes, such as moving an item from the oven to the countertop. *Id*. ¶¶ 43–46. Additionally, Plaintiffs allege that the likelihood of soda lime Pryex shattering increases with use over time. *Id*. ¶¶ 47–49.

To make the soda lime more glass more heat resistant, Defendants temper the glass. *Id*. ¶ 50. Plaintiffs allege that the tempering process: (1) increases the risk of

breakage when consumers use the Product over time; (2) causes the glass to shatter rather than "dicing" into safer, small pieces when it breaks; and (3) increases the risk that broken glass will "fly through the air" due to the process' creation of internal tension in the glass. *Id*. ¶¶ 52–58.

Although soda lime glass remains more prone to thermal breakage than borosilicate glass, Plaintiffs allege that Defendants failed to inform consumers that they fundamentally changed the Products. *Id*. ¶¶ 1–9, 86–91. Instead, Plaintiffs allege Defendants continued to advertise the Products in the same manner they had previously to create an impression that the Products had not changed; thereby continuing to capitalize on Pyrex's strong consumer reputation earned from the borosilicate products' performance. *Id*.

C.    Relevant Representations

Plaintiffs identify several relevant representations that they believe became part of the bargain when they purchased the Products. Plaintiffs allege Defendants represented that:

- Where Defendants do disclose the Products are made from soda lime glass (on an online FAQ), they represent that soda lime glass provides the same high-quality performance as borosilicate glass. *Id*. ¶ 7 n.3.

- The Products as currently manufactured are versatile. *Id*. ¶ 67.

- The Products as currently manufactured are dishwasher, refrigerator, microwave, and pre-heated oven safe. *Id*.

- The Products as currently manufactured can be used for cooking, baking, warming, and reheating food in microwaves, ovens, and pre-heated conventional or convection ovens. *Id.* ¶ 90.

Plaintiffs claim that the Products as currently manufactured are inherently incapable of meeting Defendants' representations. *Id.* ¶¶ 34–58, 69–70.

## II.  Legal Standard

### A.  Motion to Dismiss—Rule 12(b)(6)

Defendants seeks to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). To analyze a motion to dismiss under Rule 12(b)(6), this Court must construe the Complaint in the light most favorable to the plaintiffs, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 863 (7th Cir. 2010). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive Defendants' motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The amount of factual allegations required to state a plausible claim for relief depends on the complexity of the case, but threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

Finally, if the claims of the putative class do not have a class representative to assert them, those claims must be dismissed. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977).

### B. Motion to Strike—Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), "a district court 'may strike from the pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Geary v. Maryville Acad.*, No. 12 C 1720, 2012 WL 2129228, at *1 (N.D. Ill. June 12, 2012) (quoting *Delta Consulting Group, Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009)). Motions to strike are generally disfavored but are nevertheless appropriate when "they serve to expedite litigation." *Id.* (citing *Heller Fin., Inc. v. Midwhey Powder*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

## III. Analysis

### A. Standing

Although Defendants did not challenge standing, this Court has an independent obligation to consider whether it has subject matter jurisdiction over the claims in this case. *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992). The Constitution

prohibits this Court from exercising jurisdiction over a plaintiff's claim when the plaintiff has not alleged facts demonstrating he or she has standing. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) ("The doctrine of standing imposes a non-negotiable limit on the power of a federal court."). Indeed, establishing standing is not a "mere pleading requirement but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. When a plaintiff fails to demonstrate standing, courts lack authority to decide the merits of his or her case. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988)). Standing requires, among other things, that the plaintiff suffered an injury in fact. *Lujan*, 504 U.S. at 560.

With this background in mind, this Court turns to whether Plaintiffs Simon and Fullerton possess standing to assert their claims. Both individuals base their claims upon the failure to receive the benefit of the bargain. [26] ¶¶ 94, 108. In other words, Plaintiffs seek damages meant to give them the benefit they expected to receive from the contract they made with Defendants. E. Allen Farnsworth, *Legal Remedies for Breach of Contract*, 70 COLUM. L. REV. 1145, 1147–48 (1970).

Yet neither Plaintiff Simon nor Plaintiff Fullerton purchased the Products. [26] ¶¶ 92, 103. Plaintiff Fullerton's boyfriend purchased her Pyrex, and Plaintiff Simon received Pyrex as a gift. *Id*. Because neither individual purchased the Products, neither Plaintiff failed to receive the benefit of the bargain as they did not strike a bargain with Defendants by purchasing the Products. For this reason, this

Court must dismiss their claims for lack of standing. *Lujan*, 504 U.S. at 563 (in order to establish injury to confer standing, the plaintiff must be among the injured) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972)).

Consequently, this Court dismisses all of Plaintiffs Simon's and Fullerton's claims without prejudice. Additionally, because Plaintiff Simon is the only class representative asserting claims based upon Michigan law, Plaintiffs' claims asserting violations of Michigan law are dismissed because the putative class claims cannot proceed without a class representative, *Wal-Mart Stores*, 564 U.S. at 49; *E. Tex. Motor Freight Sys.,* 431 U.S. at 403 (1977), this claim cannot proceed.

B.    Express Warranty Claims

Turning now to the individual claims, this Court first analyzes the remaining Plaintiffs' contract claims.

*1. Scope of the Warranty*

Plaintiffs allege Defendants sold the Products with several express warranties attached. [26] ¶¶ 140, 161, 179, 197, 215, 232, 249; [45] at 23–24. Defendants contest the existence of some express warranties, challenge that they did not breach others, and argue that Plaintiffs failed to state a claim for some of their express warranty allegations. [38] at 8–15. This Court will consider these arguments in turn.

As a threshold matter, the parties disagree about the applicable express warranties. Defendants attempt to restrict Plaintiffs' express warranty claims to the Pyrex Limited Two-Year Warranty (the Limited Warranty). [38] at 8–9. The Limited Warranty anticipates that the Products might experience thermal breakage and

promises replacement if the Products break and the consumer followed Defendants' usage instructions. *Id.* at 8–9, (Ex. A).[2]  In contrast, Plaintiffs argue that other express warranties also attached based upon Defendants' representations to consumers that the Products were high-quality, versatile, and safe to use in a variety of settings. [45] at 23–24.

Under New York, Illinois, Florida, Ohio, and Massachusetts law, an express warranty includes "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . [or] [a]ny description of the goods which is made part of the basis of the bargain." N.Y. U.C.C. Law § 2–313; 810 ILCS 5/2-313; Fla. Stat. § 672.313(1); Ohio Rev. Code § 1302.26; Mass. Gen. Laws ch. 106 § 2–313.

Viewed in the light most favorable to Plaintiffs, Defendants' representations that the Products as currently manufactured are high-quality, versatile, and safe to use in a variety of settings including high temperatures and sudden heat changes could constitute an affirmation of fact or promise and/or a description of the goods that is part of the basis of bargain.  Therefore, Plaintiffs sufficiently allege breach of express warranty beyond the Limited Warranty.  This Court will now consider Defendants' challenges to the sufficiency of the individual express warranty claims.

---

[2] Because Plaintiffs reference Defendants' Limited Warranty and instructions in their Complaint, [26] ¶¶ 87 n.53, 91, this Court may consider them without converting Defendants' motion into a motion for summary judgment. *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

2. *Timeliness of Plaintiffs' New York and Massachusetts Express Warranty Claims (Counts 2 and 7)*

Under New York and Massachusetts law, warranty claims must be asserted within four years after the cause of action accrued. N.Y. U.C.C. § 2–725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); MASS. GEN. LAWS ANN. ch. 106 § 2–725(1) (same). A cause of action accrues when the goods are tendered, not when the defect is discovered. N.Y. U.C.C. § 2–725(2); MASS. GEN. LAWS ANN. ch. 106 § 2–725(2). While certain exceptions exist, *id.*, those exceptions do not apply here, *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 532 (E.D.N.Y. 2012) (accrual of the plaintiff's claims may only be delayed when the warranty explicitly extends to future performance and the nonbreaching party must wait until that performance occurs).

Plaintiffs Slepian and Klein purchased the relevant Pyrex products more than four years ago. [26] ¶¶ 95, 116. For that reason, Plaintiffs fail to allege that they timely asserted their claims. *See id.* ¶¶ 133–34. Instead they argue Defendants' actions tolled the statute of limitations, *id.*, because Defendants allegedly concealed the "true character, nature, and quality of soda lime Pyrex," *id.* ¶ 133. Yet Defendants expressly disclosed on the Limited Warranty and safety instructions that accompany all Pyrex products that Defendants' Pyrex may shatter when exposed to a sudden change in temperature. *See, e.g.*, [38] (Exs. A-C). And, as Plaintiffs also note in their Complaint, public documents, which Plaintiffs could have discovered with reasonable diligence, detail that Pyrex made from soda lime glass remained more susceptible to shattering when exposed to sudden temperature changes. *See,*

*e.g.*, [26] ¶¶ 46, 59. Finally, mere silence or failure to disclose the complained of wrongdoing remains, without more, insufficient to find Defendants actively concealed the defect. *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 468 (S.D.N.Y. 2015). Thus, even construing the facts in the light most favorable to Plaintiffs, Defendants' actions fail to constitute fraudulent concealment thereby equitably tolling the statute of limitations. *Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 482–83 (S.D.N.Y. 2000); *Abdallah v. Bain Cap. LLC*, No. 12–12027–DPW, 2013 WL 3491074, at \*4 (D. Mass. July 9, 2013). Accordingly, this Court dismisses Plaintiffs Slepian's and Klein's breach of express warranty claims under New York and Massachusetts law as untimely.

### 3. *Florida Express Warranty Claims (Count 3)*

Defendants' argue that Plaintiff Grau's Florida express warranty claim fails to allege a specific representation that she relied upon when purchasing the Products as required to state a claim under Florida law. [38] at 12–13. Although the Florida Uniform Sales Act casts doubt on whether reliance remains an element of a claim for breach of express warranty, *see* FLA. STAT. § 672.313 n.3, Florida courts continue to treat reliance as an essential element of a breach of express warranty claim, *see, e.g.*, *Martin v. SmithKline Beecham Corp.*, Case No. 06-80456-CIV-RYSKAMP/VITUNAC, 2006 WL 8433438, at \*7 (S.D. Fla. Aug. 15, 2006); *Thursby v. Reynolds Metals Co.*, 466 So.2d 245, 250 (Fla. Dist. Ct. App. 1984). Therefore, this Court treats reliance as an element of the claim under Florida law.

Plaintiff Grau, however, has not alleged what representations Defendants made that she relied upon when purchasing her Pyrex. *See* [26] ¶¶ 99–102. Without alleging reliance, Plaintiff Grau fails to sufficiently allege a claim for breach of express warranty under Florida law. *Martin*, 2006 WL 8433438, at *7 (dismissing the plaintiff's express warranty claim because although the plaintiff alleged the defendant made various representations to the general public, "[n]owhere [did she] allege that she purchased or ingested Wellbutrin because she acted in reliance on an advertisement or representation by [the defendant]") (emphasis in original). As such, this Court grants without prejudice Defendants' motion to dismiss her claim.

### 4. *Ohio Express Warranty Claim (Count 6)*

Defendants next argue that Plaintiff Schutte's express warranty claims are deficient because she failed to allege how she gave Defendants notice prior to filing suit. [38] at 13. Under Ohio law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." OHIO REV. CODE § 1302.65(C)(1). Plaintiff Schutte concedes she did not provide Defendants pre-suit notice. [45] at 25–26. Rather, she argues that no notice obligation exists because Defendants already knew of the defect and, thus, they already knew they were in breach. *Id*. But, even if Defendants have independent knowledge of their breach, a plaintiff must still provide pre-litigation notice. *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008). Ohio law imposes this requirement not only to inform the defendant of the breach, but also to provide the parties an opportunity to resolve their claims and avoid litigation

altogether by curing the defect. *Id.* at 903. For this reason, Defendants' motion to dismiss Plaintiff Schutte's express warranty claims is granted with prejudice.

   *5. Breach of the Limited Warranty for Plaintiffs' Illinois Claim (Count 5)*

   As to Plaintiff Cashmore's breach of the Limited Warranty claim, Defendants argue her claim should be dismissed for her failure to fulfill her obligations under the Limited Warranty, which required her to request a replacement. [38] at 10. Plaintiff Cashmore, however, counters that the Limited Warranty's sole remedy—to replace the Products with new Pyrex also made from soda lime glass—fails its essential purpose and/or is unconscionable because the new Product will suffer from the same latent defect. [26] ¶¶ 151–53.

   Under Illinois law, a warranty term may be unenforceable when the warranty is unconscionable. *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *2–*4 (N.D. Ill. June 9, 2014). If the warranty term is unenforceable, then compliance with that term is unnecessary. *Id.* In this case, Plaintiff Cashmore alleged that the Products contain a latent defect that Defendants knew of when they sold the Products. [26] ¶¶ 5, 9, 69–70. Moreover, she further alleges that her only remedy under the Limited Warranty would be to receive another Product containing the same latent defect, which is no remedy at all. *Id.* ¶¶ 151–52. As such, Plaintiff Cashmore has sufficiently stated a claim for procedural unconscionability thus making the Limited Warranty's terms unenforceable. *Stavropoulous*, 2014 WL 2609431, at *2–*4. Therefore, Plaintiff Cashmore's allegations remain sufficient to

sustain a breach of contract claim under the Limited Warranty, even though she did not request a replacement.

C.    Implied Warranty Claims

Plaintiffs also allege violations of various implied warranty laws. [26] ¶¶ 265–345. They allege that the Products are not fit for use as versatile bakeware. *Id*. Defendants present multiple arguments as to why Plaintiffs' implied warranty claims should be dismissed. [38] at 17–21.

First, they argue that all of Plaintiffs' claims should be summarily dismissed because they fail to allege the Products do not perform as reasonably expected. *Id*. at 18–19. In this case, though, Plaintiffs sufficiently alleged facts that a consumer might reasonably expect the Products to withstand sudden temperature changes better than they currently do. Plaintiffs allege that borosilicate Pyrex has a long history with consumers. [26] ¶¶ 2–3, 64–66 (noting manufactures have advertised Pyrex to consumers for over 100 years). Plaintiffs also note Defendants, and Corning before them, advertised Pyrex as uniquely versatile and able to withstand sudden and extreme changes in temperature. *Id*. ¶¶ 64–66 (previous advertisements marketed Pyrex as suitable from "ice-box to oven" and "oven to ice-box" and that Pyrex could be used to mix, bake, and serve all in the same dish). Based upon Plaintiffs' allegations including the nature of Pyrex's extensive consumer history, the fact that the Products continue to be sold under the Pyrex name, are still marketed as "versatile" and "safe," and that Defendants fail to note on the Products or in advertisements that the Products are now made with a less thermal resistant glass, *id*. ¶¶ 63–71, Plaintiffs

have sufficiently alleged facts plausibly showing that the Products do not perform as reasonably expected. This Court next turns to Defendants' specific arguments regarding the various state implied warranty claims.

### 1. Timeliness of New York and Massachusetts Implied Warranty Claim (Counts 8 and 13)

Defendants argue that the New York and Massachusetts claims for breach of implied warranty are untimely. [38] at 20. As this Court explained earlier, under New York and Massachusetts law, warranty claims must be asserted within four years after the cause of action accrued. N.Y. U.C.C. § 2–725(1); MASS. GEN. LAWS ANN. ch. 106 § 2–725(1). Plaintiff Slepian's and Plaintiff Klein's implied warranty claims accrued more than four years ago and are thus time-barred. Accordingly, Defendants' motion to dismiss Counts 8 and 13 is granted.

### 2. Failure to Plead Privity for Plaintiffs Florida, Illinois, and Ohio (Counts 9, 11, and 12)

Defendants next argue that Plaintiff Grau's, Plaintiff Cashmore's, and Plaintiff Schutte's respective Florida, Illinois, and Ohio implied warranty claims should be dismissed for lack privity. [38] at 20–21. Defendants contend that Plaintiffs have not and cannot allege privity because they purchased the Products from various retailers rather than directly from Defendants. *Id*. Plaintiff Grau, Plaintiff Cashmore, and Plaintiff Schutte concede they lack privity with Defendants but counter that their claims should be exempted from this requirement because they were the intended third-party beneficiaries and because Defendants dealt directly with consumers. [45] at 14–16.

Under Illinois law, privity constitutes an essential prerequisite to state a claim for economic damages based upon a breach of implied contract. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (affirming the district court's dismissal of a consumer's breach of implied warranty claims for lack of privity with the manufacturer). An exception to this general rule exists, however, when the manufacturer and the consumer had a direct relationship, or when the manufacturer knew the identity, purpose, and requirements of the seller's customer and delivered the goods to meet those requirements. *Chi. Heights Venture v. Dynamit Nobel of Am., Inc.*, 575 F. Supp. 214, 219 (N.D. Ill. 1983) (citing *Frank's Maint. & Eng'g, Inc., v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980)).

Here, Plaintiff Cashmore has not sufficiently alleged facts showing a direct relationship under Illinois law. While Plaintiffs generally alleges Defendants made representations and advertisements that were directed at consumers, [26] ¶¶ 63–71, Plaintiff Cashmore has not alleged any information establishing a direct relationship, [26] ¶¶ 109–12. For example, she has not alleged: any direct communications with Defendants or their agents prior to purchasing the Products, facts showing that Defendants took unique steps to create the Product for her needs or remedy the defect for her needs, or that Defendants were aware that Plaintiff Cashmore was Walmart's ultimate customer. *See Abco Metals Corp. v. J.W. Imp. Co., Inc.*, 560 F. Supp. 125, 128 (N.D. Ill. 1982) (outlining the factors that create a direct relationship). Without more, her implied warranty claim cannot proceed. *Sadler v. Pella Corp.*, 146 F. Supp.

3d 734, 749 (D.S.C. 2015) (applying Illinois law). For these reasons, Plaintiff Cashmore's Illinois implied warranty claim is dismissed with prejudice.

This Court now turns to Plaintiff Grau's breach of implied warranty claim. Florida law also strictly requires privity to sustain a claim of breach of implied warranty. *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1388 (S.D. Fla. 2014). The privity requirement extends to consumer claims even when the manufacturer directly markets its products to consumers. *See id.* (dismissing consumer claims for breach of implied warranty against cereal manufacturers who also marketed and advertised the cereal products); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1267 (N.D. Fla. 2012) (dismissing a consumer's claims against a manufacturer when she "failed to allege that she purchased the Steam Vac directly from the Defendants, but rather, specifically alleged that she purchased the Steam Vac from a third-party retailer"). Here, Plaintiff Grau alleged that she purchased the Product from Target rather than Defendants. [26] ¶ 99. Therefore, she fails to allege privity and, by extension, fails to state a claim for breach of implied warranty. Her claim is, thus, dismissed with prejudice.

Finally, Ohio law also requires privity of contract to state a claim for breach of implied warranty. *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 620 (N.D. Ohio 2016). Ohio courts have also declined to recognize an exception to this requirement for intended beneficiaries of a manufacturer's agreement with a retailer given the Ohio Supreme Court's "unequivocal language" that privity is required to maintain an implied warranty claim. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 757–58 (N.D.

Ohio 2010) (citing *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007)). Despite the privity requirement, Plaintiff Schutte pled that she purchased the Products from Kroger. [26] ¶ 113. This Court, thus, grants with prejudice Defendants' motion to dismiss Plaintiff Schutte's claim for breach of implied warranty.

Because this Court has dismissed all of Plaintiffs' Implied Warranty claims, this Court need not evaluate Defendants' further arguments that Plaintiffs Slepian's and Klein's claims are defective because they misused their Products, and that Plaintiff Slepain's and Plaintiff Schutte's claims failed to plead notice.

### D.      Magnuson-Moss Warranty Act Claims (Count 1)

Defendants argue that where Plaintiffs' state warranty claims fail, so too do their Magnuson-Mass Warranty Act (MMWA) claims. [38] at 15–16. This Court agrees. The Act provides federal jurisdiction for plaintiffs to assert warranty claims but does not provide substantive rights. *See IWOI, LLC v. Monaco Coach Corp.*, 581 F.Supp.2d 994, 999 (N.D. Ill. 2008). Therefore, if a plaintiff's state law warranty claim is insufficient, her MMWA claim must also be dismissed. *See, e.g., McKee v. Gen. Motors*, 376 F. Supp. 3d 751, 760 (E.D. Mich. 2019) ("The MMWA lacks substantive requirements but provides a federal remedy for breach of warranties under state law. Thus, 'the applicability of the [MMWA] is directly dependent [sic] upon a sustainable claim for breach of warranty.'") (alternation in original) (quoting *Wozniak v. Ford Motor Co.*, 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4,

2019)).  Thus, Plaintiffs MMWA claims rise and fall with their state law warranty claims.

E.    Plaintiffs' Common Law Contract Claims (Count 15)

Plaintiffs assert a generalized common law contract claim should this Court dismiss their UCC-based warranty claims.  [26] ¶¶ 352–60.  This claim fails as a matter of law.  Whenever a provision of the UCC applies to the parties' claims, then the UCC displaces common law claims.  *Crawford Supply Grp., Inc. v. Bank of Am., N.A.*, 829 F. Supp. 2d 636, 645 (N.D. Ill. 2011) (the UCC displaces the common law whenever a provision of the UCC governs the dispute); *Landtek Grp., Inc., v. N. Am. Specialty Flooring, Inc.*, CV 14–1095 (SJF) (AKT), 2016 WL 11264722, at *36 (E.D.N.Y. Aug. 12, 2016) (the UCC displaced common law warranty claims); *see also* 810 ILCS 5/1–103(b) (if a particular provision of the UCC governs an issue, it will displace the common law); OHIO REV. CODE § 1301.103(B) (same); MICH. COMP. LAWS § 440.1103(2) (same); FLA. STAT. § 671.103 (same); NY UCC § 1-103 (same); MASS. GEN. LAWS ch. 106 § 1-103 (same).  As relevant here, the UCC expressly governs the sale of goods, JOHN BOURDEAU, ET AL., 67 AM. JUR. 2D SALES § 3 (2d ed. 2019), and, thus, displaces the common law.  Furthermore, Plaintiffs fail to provide any authority as to why the UCC does not apply to their claims.  [45] at 18.  For this reason, this Court dismisses Plaintiffs' common law contract claim without prejudice.

F.    Plaintiffs' Consumer Protection Claims

Unlike Plaintiffs' contract claims, which are based upon Defendants' representations, Plaintiffs assert claims for violations of various consumer protection

statutes based upon Defendants' alleged omission on the Products and in advertising that the Products are now made from a less heat resistant glass.[3]  [26] ¶¶ 364, 372–374, 387, 395, 408–09, 424, 439, 451, 460; [45] at 6–10.  Defendants advance two arguments arguing that this Court should summarily dismiss Plaintiffs' consumer protection claims.  [38] at 25–28.  This Court finds neither persuasive.

### 1.  Defendants' Express Disclosure of the Defect

Defendants first contend that Plaintiffs' consumer protection claims must be summarily dismissed because Defendants expressly disclosed that the Products may experience thermal breakage in the Products' Limited Warranty and user instructions.  [38] at 25–27.  Even so, Plaintiffs allege that Defendants gave conflicting instructions and representations that were likely to confuse a reasonable consumer.  [26] ¶ 91; [45] at 2, 5–6.  This Court finds Plaintiffs' allegations sufficient to state a claim for consumer deception.

For example, in *Marty v. Anheuser-Busch Companies, LLC*, the court found the plaintiffs successfully stated a claim under Florida's consumer protection statute based in part upon conflicting statements that could plausibly confuse a reasonable consumer.  43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014).  In that case, the plaintiffs purchased Beck's Beer believing it was brewed in Germany.  *Id*. at 1336.  Although

---

[3] Although some of the facts pled in the Complaint allege consumer deception based upon Defendants' representations as well as omissions, *see, e.g.*, [26] ¶ 372, in their Opposition, Plaintiffs do not respond to Defendants' argument that their claims based on affirmative statements had to meet the requirements under Federal Rule 9(b).  [45] at 6–10.  Instead they characterize their claims as solely based upon a theory of fraudulent omission.  *Id*.  For this reason, as to the current motions, Plaintiffs have waived any argument that their consumer protection claims are also based upon Defendants' affirmative representations.  *See Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (determining plaintiff abandoned a claim when he failed to raise it in his opposition to summary judgment).

the beer's packaging explicitly stated it was brewed in St. Louis, MO and that it was a "Product of the USA," the plaintiffs nevertheless argued that consumers were confused. *Id*. at 1340–42. The plaintiffs pointed out that the beer was previously brewed in Germany and that the defendants' advertising frequently mentioned the beer's German heritage. *Id*. Thereby, the court found the plaintiffs had plausibly stated a claim for consumer deception despite the defendants' express disclosure. *Id*.

So too in this case, Plaintiffs allege that: Defendants continue to market their Products under the longstanding Pyrex name; that they fail to expressly state the Products are now made with a less thermal resistant form of glass; that when they do address the material change on an FAQ, Defendants fail to explain the defect and represent generally that soda lime glass provides the same high-quality performance as borosilicate and that the Products are versatile and dishwasher, refrigerator, microwave, preheated oven safe. [26] ¶¶ 5–9, 67–70, 90. These allegations are sufficient to state a claim that a reasonable consumer may be misled into believing the Products are safer, more versatile, and more resistant to thermal breakage than they are, even in spite of Defendants' warning.

### 2. *Plaintiffs' Failure to Plead Fraud with Particularity*

Defendants also argue that all of Plaintiffs' state consumer fraud claims should be dismissed for failure to comply with the heightened pleading standard under Federal Rule of Civil Procedure 9(b). [38] at 27–28. This Court disagrees for several reasons. First, contrary to Defendants' assertion, the various state consumer protection laws implicated here do not require Plaintiffs to meet the Rule 9(b)

heightened pleading standard. For example, in Florida, the Deceptive and Unfair Trade Practices Act "was enacted to provide remedies outside the reach of common law torts such as fraud, and therefore, the plaintiff need not prove the elements of fraud to sustain an action under the statute." *Galstaldi v. Sunvest Cmty. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (internal quotation marks omitted) (quoting *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005)). Similarly, Plaintiffs do not need to meet Rule 9(b)'s requirements to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Besides, Plaintiffs base their consumer protection claims upon a fraudulent omission theory. [26] ¶¶ 5, 8, 39, 41, 70; [45] at 6–10. The standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim. *McKee*, 376 F. Supp. 3d at 760–61. To plead fraudulent omission, Plaintiffs must allege details regarding the who, what, when, where, and how. *Id.* Here, Plaintiffs allege those details by asserting that Defendants, since switching to soda lime glass, failed to disclose to consumers, either on the Products or in marketing campaigns, that the Products were made from an allegedly lower quality glass. [26] ¶¶ 5, 8, 39, 41, 65, 70. These allegations remain sufficient to state a claim for fraudulent omission.

Defendants also allege various pleading defects as to particular consumer protection statutes. This Court will now address these arguments in turn.

### 3. *Timeliness of Plaintiffs' New York Claims (Counts 16 and 17)*

Corelle argues that Plaintiff Slepian's consumer fraud claims are untimely. [38] at 29. "Claims brought under New York General Business Law §§ 349 and 350 are subject to a three-year statute of limitations." *Martin Hilti Family Tr.*, 137 F. Supp. 3d at 466; NY CPLR § 214(2). The cause of action begins to accrue at the time Plaintiffs purchased the inherently defective Products. *Gould v. Helen of Troy Ltd.*, 16 Civ 2033 (GBD), 2017 WL 1319810, at *3 (S.D.N.Y. March 30, 2017). Plaintiff Slepian purchased the Products in 2013. [26] ¶ 95. Her claims, then, are time-barred as she purchased her Pyrex product more than three years ago. Thus, this Court grants Defendants' motion to dismiss Counts 16 and 17.

### 4. *Failure to Plead the Elements of the Ohio Consumer Sales Practices Act (Count 22)*

Defendants argue that Plaintiff Schutte's claim under the Ohio Consumer Sales Practices Act (OCSPA) fails to allege facts showing that Defendants had prior notice that their specific actions were deceptive or unconscionable. [38] at 33 n.18. Ohio courts articulated:

> To adequately plead prior notice under O.R.C. § 1345.09(B), plaintiff must allege either that a specific rule or regulation has been promulgated by the Ohio Attorney General under R.C. 1345.05 that specifically characterizes the challenged practice as unfair or deceptive, or that an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.

*Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (internal punctuation and quotation marks omitted) (quoting *Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 720 (Ohio Ct. App. 2003)).

To fulfill the notice requirement, Plaintiff Schutte cites a section of Ohio's Administrative Code that generally prohibits misleading representations. [26] ¶ 442. But generic provisions are not enough because Plaintiff Schutte must identify a *substantially* similar act or practice which the Ohio Attorney General or an Ohio court previously declared deceptive. *Id.* at 1055–56 (citing *Marrone v Phillip Morris USA, Inc.*, 850 N.E.2d 31, 36 (Ohio 2006)). The generic provision Plaintiff Schutte cites "does not refer to any particular act or practice" such as a substantially similar conduct taken within the same industry. *Marrone*, 850 N.E.2d at 36 (rejecting the plaintiff's assertion that a generic rule provided prior notice because permitting a generic rule to suffice "would allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice") (emphasis in original). Because Plaintiff Schutte failed to allege Defendant had prior notice that its actions were deceptive as required under the OCSPA, this Court dismisses her OCSPA claim.

### 5. *Ohio Deceptive Trade Practices Act (Count 23)*

Plaintiff Schutte's claim under the Ohio Deceptive Trade Practices Act (ODTPA) also fails. While the Ohio Supreme Court has not addressed the question of whether consumers have standing to assert claims under the ODTPA, the "vast majority of federal courts and all lower [Ohio] state courts to address the issue have

concluded that relief under the DTPA is not available to consumers." *Phillips v. Philips Morris Companies Inc.*, 290 F.R.D. 476, 482 (N.D. Ohio 2013). Thus, this Court finds that Plaintiff Schutte, as a consumer, does not have standing to assert this claim and dismisses Count 23.

### 6. Failure to Plead Reliance or Causation for Plaintiffs' New York, Florida, Illinois, and Ohio Consumer Fraud Claims (Counts 16–23)

Defendants seek dismissal of Plaintiffs' New York, Florida, Michigan, Illinois, and Ohio consumer protection claims because Plaintiffs failed to identify any specific representation they relied upon when purchasing the Products, thereby leading to their injury. [38] at 28–29; [6] ¶¶ 92–115. Because this Court already dismissed Plaintiffs' New York, Michigan, and Ohio consumer fraud claims on other grounds, this Court will only consider Plaintiffs' Florida and Illinois claims.

Defendants argue that Plaintiffs' claims fail to identify a specific representation they relied upon to their detriment in purchasing the Products. [38] at 28–29. Typically, to state this type of claim, a plaintiff must allege the specific representation the defendant made upon which he or she relied. *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, at *2 (Fla. Cir. Ct. July 31, 2003) (analyzing claims under the Florida Deceptive and Unfair Trade Practices Act); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002) (analyzing claims under the Illinois Consumer Fraud and Deceptive Business Practices Act).

Yet Defendants misunderstand Plaintiffs' allegations. For their consumer protection claims, Plaintiffs state they were harmed by Defendants' omission rather than any representation. [26] ¶¶ 5, 8, 39, 41, 70; [45] at 6–10. Plaintiffs further pled

that had they been "aware of the Defect" [i.e. that the Product was made from soda lime glass which is more susceptible to shattering], they "would not have purchased or used Pyrex." *Id*. ¶¶ 98, 102, 112, 115, 118. These allegations suffice to state a claim of consumer deception based upon fraudulent concealment. *See, e.g., Pappas v. Pella Corp.*, 844 N.E.2d 995, 1004 (Ill. App. Ct. 2006) (reversing the trial court's dismissal of claims under the Illinois Consumer Fraud Act when "[i]n, effect, plaintiffs allege[d] they relied on [the defendant's] concealment by silence"). In sum, this Court denies Defendants' motion to dismiss Plaintiffs' Florida and Illinois consumer fraud claims based upon a theory of fraudulent concealment.

### 7. *Failure to Allege Future Harm under the Illinois Uniform Deceptive Trade Practices Act (Count 21)*

Plaintiff Cashmore seeks injunctive relief against Defendants under the Illinois Uniform Deceptive Trade Practices Act (UDTPA). [26] ¶ 434. The UDTPA is designed to enjoin trade practices that are deceptive or confusing to consumers. 815 Ill. Comp. Stat. 510/2; *see also Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992) ("The purpose of the DTPA is the enjoining of trade practices which confuse or deceive the consumer.") (internal quotation marks omitted). A claim is proper under the UDTPA when the plaintiff alleges facts showing a likelihood of future damage. *Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015) (citing *Robinson v. Toyota Motor Credit Corp.*, 735 N.E.2d 724, 735 (Ill. App. Ct. 2000)). Defendants contend that given that Plaintiff Cashmore is now aware the Products are manufactured with soda lime glass, she is unlikely to succumb to future harm by purchasing the Products again. [38] at 30. In fact, she even alleges that had

she known of the defect when she purchased the Products, she would have taken a different course of action. [26] ¶ 430 (alleging that had Plaintiff Cashmore "known of the serious safety risk and/or the Defect in Pyrex, [she] would not have purchased Pyrex, or else would have paid substantially less for it"). Therefore, Defendants argue that she is at no risk of continuing to be fooled by Defendants' allegedly deceptive conduct.

This Court finds Defendants' argument persuasive. *See Howard v. Chicago Transit Auth.*, 931 N.E.2d 292, 299 (Ill. App. Ct. 2010). Indeed, the UDTPA's future harm requirement frequently proves problematic for plaintiffs asserting consumer claims. *Aliano*, 115 F.Supp.3d at 928 (noting that the problem in most consumer actions under the act "is the inability to allege facts indicating the likelihood of damage in the future") (internal punctuation omitted) (quoting *Howard*, 931 N.E.2d at 299). This Court concludes that Plaintiff Cashmore has failed to adequately plead a likelihood of future injury. For that reason, this Court dismisses Count 21.

### 8. *Failure to Allege a Violation of Massachusetts Consumer Protection Law (Count 24)*

Plaintiffs allege violations of Mass Gen. Laws ch. 93A based upon the allegations of Plaintiff Klein. [26] ¶¶ 456–66. To state a clai m sounding in fraud under Mass Gen. Laws ch. 93A, a Plaintiff must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Rick v. Profit Mgmt. Assoc., Inc.*, 241 F. Supp. 3d 215, 225 (D. Mass. 2017). As discussed previously, however, Plaintiff Klein met this standard as to her theory of fraudulently omission. For this

reason, this Court denies Defendants' motion to dismiss Plaintiff Klein's claim under Mass Gen. Laws ch. 93A.

G.     Unjust Enrichment (Count 14)

Plaintiffs assert a generalized unjust enrichment claim.   [26] ¶¶ 346–51. Plaintiffs state they bring this claim in the alternative should their other claims not be governed by contract law.   *Id*. ¶ 347.   To support this claim, Plaintiffs assert Defendants unjustly received a benefit when Plaintiffs purchased the defective Products.   *Id*. ¶¶ 348–50.   For their part, Defendants argue that some of these claims are time-barred and that many of these claims are improper for other reasons.   [38] at 21–24.

In order to analyze this claim, this Court looks to Illinois choice-of-law principles to determine the applicable substantive law to Plaintiffs' claims.   *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010). Illinois uses the "most significant relationship test."   *Id*.   Under this test, the location of the injury controls unless Illinois has a more significant relationship.   *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 914 (N.D. Ill. 2013).   In this case, the state where the consumer lives, purchased the products, and was injured has the more significant relationship to the claims and govern Plaintiffs' claims.   *Id*.   Thus, this Court will evaluate each Plaintiff's claims based upon where she suffered an injury.

*1. Plaintiffs' Claims are Duplicative of Other Claims at Law*

Defendants argue that Plaintiffs Slepian's, Grau's, Cashmore's, and Klein's unjust enrichment claims should be dismissed as improperly duplicative of their contract and consumer protection claims. [38] at 22–23. This Court evaluates Plaintiffs claims in turn.

As to Plaintiff Slepian, under New York law, claims for unjust enrichment may not proceed as a "catchall cause of action." *Corsello v. Verizon N. Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Instead the claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* Although Plaintiff Slepian asserts that her claims are not duplicative, [26] ¶ 347, this argument rings hollow, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016). She asserts not only contract claims but also tort consumer protection claims, both of which rely upon the same underlying facts as her unjust enrichment claim. *Id.* Furthermore, Plaintiff Slepian failed to plead any facts supporting a theory that a quasi-contractual relationship existed between her and Defendants. *See* [26] ¶¶ 346–51. Instead she nakedly asserts that this claim is presented in the alternative. *Id.* ¶ 347. Thus, even viewing the Complaint in the light most favorable to her, Plaintiff Slepian's unjust enrichment claim is duplicative. Accordingly, this Court grants Defendants' motion to dismiss Plaintiff Slepian's unjust enrichment claim with prejudice.

Relatedly, under Florida law, unjust enrichment, as an equitable remedy, is available only when the plaintiff does not have a remedy at law available. *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D. Fla. 2005) (to state a claim for unjust enrichment "a party must allege that no adequate legal remedy exists"). And although unjust enrichment may be pled in the alternative, "where the unjust enrichment claim relies upon the same factual predicates as plaintiff's legal causes of action, it is not a true alternative theory of relief," and must be dismissed. *Koski v. Carrier Corp.*, 347 F.Supp.3d 1185, 1196 (S.D. Fla. 2017) (quoting *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13–61686–CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013)).

Here, Plaintiff Grau's unjust enrichment claims rest upon the same factual allegations as her contract and consumer deception claims, namely that Defendants fraudulently marketed the Products as versatile and safe without disclosing the Products were made from inferior soda lime glass, *see* [26] ¶¶ 99–102, 346–350, and that she paid more than she otherwise would have if Defendants had not concealed that the Products are now made from soda lime glass, *id.* ¶¶ 102, 349–50. Because her unjust enrichment claim relies upon the same factual predicate as her legal causes of action, her claim must be dismissed. *Koski*, 347 F. Supp. 3d at 1196 (dismissing consumer claims for unjust enrichment under Florida law when the plaintiffs alleged warranty claims and claims under the FDUTPA). Therefore, this Court grants with prejudice Defendants' motion to dismiss Plaintiff Grau's unjust enrichment claim.

Turning to Plaintiff Klein's claims, Massachusetts law likewise does not permit claims for unjust enrichment when Plaintiffs have an adequate remedy at law. *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005). Indeed, under Massachusetts law, unjust enrichment "serves only as an equitable stopgap for occasional inadequacies in contractual remedies at law." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466 (D. Mass. 2018) (quoting *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)).

As relevant here, Massachusetts courts consider claims for violations of Massachusetts consumer protection law an adequate remedy at law. *O'Hara*, 306 F.Supp.3d at 466. Furthermore, the fact that Plaintiffs may not prevail on their contract claims does not mean that they do not have an adequate remedy at law. *Shaulis*, 865 F.3d at 16 ("It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment."). For these reasons, this Court grants with prejudice Defendants' motion to dismiss Plaintiff Klein's unjust enrichment claim.

Finally, this Court examines Plaintiff Cashmore's unjust enrichment claim under Illinois law. Unlike claims under New York, Florida, and Massachusetts law, under Illinois law, a claim for unjust enrichment may be asserted alongside other claims in tort, contract, or statute. *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (citing *Cleary v. Phillip Morris*, 656 F.3d 511, 517 (7th Cir. 2011)). In such situations, the claim for unjust enrichment will naturally stand or fall with the related claim(s). *Id.* In this case, this Court declined

to dismiss Plaintiff Cashmore's Illinois Consumer Fraud Act claim. Accordingly, just as her consumer fraud claim survived dismissal, so does Plaintiff Cashmore's unjust enrichment claim.

2. *Failure to Establish a Direct Relationship with Defendants under Ohio Law*

Defendants seek dismissal of Plaintiff Schutte's Ohio unjust enrichment claim because she has not pled facts showing that she directly purchased Pyrex from Corelle. [38] at 24. Under Ohio law, unjust enrichment is not intended to compensate the plaintiff for damages lost, but rather to restore the benefit she conferred on the defendant. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005).

In this case, Plaintiff Schutte alleges she purchased "several new Pyrex bowls from a Kroger store in Ohio." [26] ¶ 113. By contrast, she does not allege that she ever purchased Pyrex directly from Defendants. *See id*. ¶¶ 113–15. But the "Ohio Supreme Court has held that in order for a plaintiff to confer a benefit on a defendant, an economic transaction must exist between the parties." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enter., Inc.*, 50 N.E.3d 955, 967 (Ohio Ct. App. 2015). Ohio courts, therefore, dismiss unjust enrichment claims when the plaintiff did not directly purchase the goods or services from the defendant. *Id*. Here, Plaintiff Schutte has failed to allege any facts suggesting that her purchase conferred a benefit on Defendants. [26] ¶¶ 113–15. For that reason, this Court grants Defendants motion to dismiss Plaintiff Schutte's unjust enrichment claim without prejudice. Plaintiff Schutte may reassert this claim if she can allege facts showing that Defendants financially profited from this transaction.

In conclusion, this Court grants Defendants' motion to dismiss Count 14 with prejudice except as it relates to Plaintiff Cashmore's claim.

H.    Defendants' Motion to Strike the Class Allegations from the Compliant

Defendants finally request this Court strike Plaintiffs' nationwide class allegations asserting MMWA claims and common law contract claims (Counts 1 and 15). [38] at 30–33. Plaintiffs also assert nationwide claim for unjust enrichment (Count 14). [26] ¶¶ 346–51. Defendants argue these claims are fatally deficient because the difference in each state's law makes the claims unsuitable for class treatment. [38] at 30–33.

To begin, this Court notes that district courts enjoy "'broad discretion to determine whether certification of a class-action lawsuit is appropriate.'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Chavez v. Ill. State Police*, 251 F.3d 849, 859 (7th Cir. 2001)). Courts may strike class allegations at the pleading stage when the "dispute is not factual and discovery is unnecessary to resolve it." *Miles v. Am. Honda Motor, Co., Inc.*, Case No. 17 C 4423, 2017 WL 4742193 at *5 (N.D. Ill. Oct. 19, 2017) (citing *Cholly v. Uptain Grp., Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015)).

Here, Corelle identifies substantial differences among state law that cannot be cured by fact discovery because certification requires extensive analysis of state law variations, not the application of disputed facts. [38] at 30–33. Corelle argues that variations in notice, privity, reliance, and statutes of limitations for the warranty laws of the six states where the seven named Plaintiffs reside necessitate striking

those allegations from the complaint. *Id.* at 31 n. 16. Defendants also identify variations in Plaintiffs' common law breach of warranty and contract claims. *Id.*

Defendants concerns are merited. As multiple courts in the Seventh Circuit have commented, district courts remain reluctant to manage nationwide classes for these types of claims. *In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("[T]he law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment."); *Muir*, 2017 WL 4310650, at *8 (citing *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006)) (same); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 314–15 (S.D. Ill. 2007) (denying a motion for class certification on an express warranty claim because the court would have to apply "the significantly-differing laws" from state to state); *In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 674 (N.D. Ill. 2009) (same); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (explaining that nationwide classes in breach-of-warranty-actions "pose serious problems about choice of law" and "the manageability of the suit").

In this case, the variance between state law on these issues means that Plaintiffs' nationwide claims present individual questions of law and fact. Because individual questions will predominate, the proposed nationwide classes do not and cannot satisfy Rule 23(b)(3)'s predominance and manageability requirements. *In re Yasmin and Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (striking unmanageable class allegations at the pleadings stage). This question is also

appropriate to decide at the pleading stage because the difficulty in Plaintiffs' claims stem from the variance in the substantive law, which discovery cannot cure. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules."). In brief, Plaintiffs nationwide class claims (Counts 1, 14, and 15) are inherently defective under Rule 23(b)(3), so this Court grants Defendants' motion to strike those allegations from the record.

## IV.    Conclusion

Defendants' motion to dismiss and strike class allegations from the complaint, Case No. 1:18-cv-4152 (No. 37); Case No. 1:18-cv-4198 (No. 43), is granted in part and denied in part. This Court grants Defendants' motion to dismiss Plaintiffs' breach of express warranty claims except for Plaintiff Cashmore's Illinois claim. This Court grants Defendants' motion to dismiss Plaintiffs' breach of implied warranty claims. This Court grants Defendants' motion to dismiss Plaintiffs' claim for breach of warranties under the Magnuson-Moss Warranty Act except for Plaintiff Cashmore's claim for breach of express warranty. This Court grants Defendants' motion to dismiss Plaintiffs' breach of contract, or, alternatively, breach of common law warranty claim. This Court grants Defendants' motion to dismiss Plaintiffs' claims for violations of N.Y. Gen. Bus. Law §§ 349 and 350. This Court denies Defendants' motion to dismiss Plaintiff Grau's claim for violation of the Florida Deceptive and Unfair Trade Practices Act. This Court grants Defendants' motion to dismiss Plaintiff Simon's claim for violation of Michigan's Consumer Protection Act. This

Curt denies Defendants' motion to dismiss Plaintiff Cashmore's claim for violation of Illinois's Consumer Fraud and Deceptive Trade Practices Act. This Court grants Defendants' motion to dismiss Plaintiff Cashmore's claim for violation of Illinois's Uniform Deceptive Trade Practices Act. This Court grants Defendants' motion to dismiss Plaintiff Schutte's claims under Ohio's Consumer Sales Practices Act and Deceptive Trade Practices Act. This Court denies Defendants' motion to dismiss Plaintiff Klein's claim for violation of Mass. Gen. Laws ch. 93A. Finally, this Court grants Defendants' motion to strike the nationwide class allegations from the complaint.

This Court sets a case management conference for Wednesday, October 9, 2019 at 10:15 a.m. in Courtroom 1203, at which point the parties shall be prepared to set all case management dates.

Dated: September 30, 2019

Entered:

John Robert Blakey
United States District Judge